719 So.2d 948 (1998)
Lawrence CUMMINGS, Appellant/Cross-Appellee,
v.
Susan CUMMINGS, Appellee/Cross-Appellant.
Nos. 96-2269, 97-1140.
District Court of Appeal of Florida, Fourth District.
October 7, 1998.
Rehearing Denied November 17, 1998.
*949 Arthur J. England, Jr., Elliot H. Scherker and John G. Crabtree of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami and Donald J. Sasser, Jorge M. Cestero, and Thomas J. Sasser of Donald J. Sasse, P.A., West Palm Beach, for Appellant/Cross-Appellee.
Jack Scarola of Searcy Denney Scarola Barnhart & Shipley, P.A., and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for Appellee/Cross-Appellant.
WARNER, Judge.
The husband appeals a final judgment of dissolution of marriage claiming that the trial court erred in its equitable distribution, overinflated the husband's income while underestimating the wife's income in calculating child support payments, and erred in ordering the husband to pay half of the wife's attorney's fees. But for one computation error in the equitable distribution scheme, we affirm.
The trial court set the value of all marital assets at $14,269,989, a number the husband claims is grossly overestimating their worth. This number was based in part on the trial court's finding that the husband had a 50% common stock interest in a company called Stockbridge Investment Partners, Inc. On appeal, the husband claims that he owned only 24% of the company, while his siblings owned the remaining 26% on the date the dissolution of action was filed. After reviewing the testimony and the exhibits, we find no error in the court's determination that the husband may be charged with ownership of the entire 50% interest. While there are documents that indicate that the husband transferred 26% of stock to his siblings (for no consideration) about six months prior to the dissolution, there are also letters *950 and other documents which indicate that the transfer did not take place until after the dissolution. Some of the documents relied upon to show ownership in the husband's siblings prior to the dissolution were actually drafted after the dissolution. In short, there was competent substantial evidence to support the trial court's findings. See Kuvin v. Kuvin, 442 So.2d 203, 206 (Fla.1983).
Because this case was truly a battle of the financial experts, the husband also makes several attacks on the wife's experts' valuations. We have reviewed each challenge and find that the values are supported by competent substantial evidence. While the husband's experts disagreed with the wife's, it was for the trial court to reconcile the conflicting testimony. See Claughton v. Claughton, 625 So.2d 853, 855 (Fla. 3d DCA 1993).
With respect to the claim that the trial court improperly considered the husband's interest in Pinellas Healthcare as a marital asset subject to equitable division, we also affirm. The husband and a partner contracted to purchase the company prior to the dissolution petition being filed. All of the arrangements had been made to close on the transaction, including financing, long-term leases, and the like. The evidence supported the conclusion that there was an enforceable agreement to purchase, which was in place at the date of dissolution. The fact that the transaction did not officially close until eleven days after the filing of the dissolution does not prevent the valuation of the contract interest as a marital asset. Although we have held that the trial court does not have discretion to distribute stock acquired after the filing of the petition, Langevin v. Langevin, 698 So.2d 601, 602 (Fla. 4th DCA 1997), the evidence shows that the husband had a vested contractual right to the stock, which can be valued as a marital asset subject to equitable distribution. In this case, the wife's expert testified that the asset was worth more than the contract price, thus giving the contract value even prior to the closing date.
The husband also claims that the trial court erroneously awarded a brokerage account valued at $1,817,325 to him as part of his share of marital assets, when in fact the account had been depleted. Under Knecht v. Knecht, 629 So.2d 883, 886 (Fla. 3d DCA 1993), rev. denied, 639 So.2d 978 (Fla. 1994), the valuation and award of an asset which in fact has been depleted is error. Nevertheless, in the instant case the wife persuasively argues that this award was offset by the trial court's attribution to the husband of a tax obligation of $1,454,338 which has already been paid. However, this leaves a difference between the two awards of $362,987, which overstated the wife's share of equitable distribution. We thus reverse on this issue and remand to the trial court to correct the final judgment in this regard.
Next, the husband claims that the trial court erred by awarding personal property to the wife when, at trial, it indicated that it would not do so. We do not find that the trial court made any such definitive statement. Moreover, the trial court's ultimate ruling followed the husband's expert's distribution plan in which these items were distributed to the wife. There was no error.
Although the husband claims error with regard to the trial court's finding that his income or income earning ability was in excess of $35,000 per month for the purpose of establishing child support, there is ample support in the record for the court's findings, including the husband's own financial affidavits and representations to financial institutions. With respect to the calculation of the wife's income, the amount of money that the wife may be expected to earn from the assets she will acquire by way of equitable distribution should normally be included. Cf. Feidelman v. Feidelman, 699 So.2d 744, 744-45 (Fla. 4th DCA 1997). Section 61.30(2), Florida Statutes (1995), requires that income shall be determined and shall include, but is not limited to, the following items:
3. Business income from sources such as self-employment, partnership, close corporations, and independent contracts. "Business income" means gross receipts minus ordinary and necessary expenses required to produce income.
....
10. Interest and dividends.
....

*951 12. Income from royalties, trusts, or estates.
....
14. Gains derived from dealings in property, unless the gain is nonrecurring.
In other words, the statute expects that parents will support their children with all of the resources and abilities at their disposal. However, in the instant case those payments were to be made in three future installments, and if they were not paid the wife would receive a judgment for the unpaid amounts. Thus, the wife is not assured of having these assets at her disposal to earn income. Under these circumstances, the trial court was not required to attribute income from these future assets to the wife. This is without prejudice to the husband to petition for modification of the child support payments if and when the wife receives the assets in equitable distribution.
The husband also argues that the trial court committed additional error by requiring him to pay additional temporary child support pending appeal from the final judgment because he could not afford to pay it. He argues that his petition for bankruptcy constituted a substantial change in circumstances that precluded him from paying the additional support. While we indicated in Cummings v. Cummings, 685 So.2d 101, 101-02 (Fla. 4th DCA 1997), that the husband's bankruptcy was an impediment to making the equitable distribution payment, that holding does not apply to child support payments. The husband did not introduce any evidence indicating that the pending bankruptcy affected his monthly income.
Finally, the husband claims that he should not have to pay half of the wife's attorney's fees as ordered by the court, and the wife claims that he should have to pay the entire amount. We find no error and affirm both the appeal and cross-appeal on this issue.
STEVENSON and SHAHOOD, JJ., concur.