814 So.2d 498 (2002)
Randall CARUSO, Appellant,
v.
Marlene Joy CARUSO, Appellee.
No. 4D01-3110.
District Court of Appeal of Florida, Fourth District.
April 10, 2002.
Rehearing Denied May 1, 2002.
*499 Mark D. Kairalla and James D Tittle of Glenn, Tittle & Kairalla, P.A., West Palm Beach, for appellant.
Alan C. Kauffman of Alan C. Kauffman & Associates, Boca Raton, for appellee.
HAZOURI, J.
Randall Caruso (husband), timely appeals from the Final Judgment of Dissolution and the denial of the Motion for Rehearing. Marlene Caruso (wife), timely filed a cross-appeal.

FACTS
The parties married on December 31, 1993, and were separated on October 1, 1999. The husband filed this petition for dissolution of marriage on November 16, 1999. The marriage lasted five years and ten months. The one child of the marriage, Alexander, was born on January 8, 1994, and was seven and a half at the time of trial. Custody by the mother with liberal visitation by the father was stipulated to by the parties. The wife was 38 years of age and the husband was 46 years of age at the time of trial and both were in good health.
During (and prior to) the marriage the husband produced television commercials or infomercials to promote various consumer products. He formed his own companies for the marketing of these products or he worked for companies which he and third party investors would create.
Prior to the marriage the wife worked as a waitress, actress and in marketing both for the husband in his business ventures and for other companies. During the marriage, she gained skills in the area of sales and marketing by working with the husband and other companies. The wife testified that she was several credit hours short of earning a college degree *500 and needed to obtain her degree to maximize her income.
The husband had an income in excess of $100,000 per year producing commercials and infomercials during the marriage, but these ventures involved the development of a marketing plan for a product and only if the product caught on did he or his companies earn revenue and royalties. If the product was unsuccessful, he derived no income. The husband continually looks for new products to market as the consumer products have a short sales life span.
When the parties separated and the husband filed for divorce, the only product that the husband had that was producing revenue was Metabofast, a diet pill. On November 9, 1999, the husband sold the marketing rights to the diet pill to Telebrands Corporation. On November 29, 1999, there was a temporary relief agreement which provided that the parties share in the proceeds from the sale of the Metabofast marketing rights after an investor had been repaid.
The day after filing the petition for dissolution, the husband incorporated Lucky Star Advertising, Inc. (Lucky Star). On November 30, 1999, he signed a licensing agreement to market a product known as "Lens Buff." The idea to form Lucky Star to market the "Lens Buff" product was conceived in the summer of 1999 before the dissolution petition was filed. The wife participated in a meeting with the husband and Steve Kozel, a potential investor, at which time she urged her husband to adopt "Lens Buff" as a product to market. At the end of September of 1999, Kozel paid the husband a retainer of $22,000. The retainer was to be considered earned only upon the production of a commercial for "Lens Buff." Should the husband fail to produce the commercial, the $22,000 would have to be returned. After the petition was filed, the husband funded Lucky Star with $2,500 taken from an account in the husband's name that contained marital funds. In February 2000, Lucky Star produced a commercial for "Lens Buff" and changed the product's name to "Scratch Be Gone." At first the commercial was not successful but after two "reshoots" of the commercial, Lucky Star began marketing the product in the fall of 2000.
The tax return for the year ending December 31, 2000, shows net earnings of $128,462 for Lucky Star. The parties were in disagreement as to whether Lucky Star was a marital asset subject to equitable distribution.
In its final judgment, the trial court made inter alia the following factual conclusions:
18. The Court finds that the Wife was a motivating force in the Husband's decision in producing and marketing "Scratch Be Gone."
19. It is inescapable that the Husband had a calculated plan to obtain the marketing rights of the product "Scratch Be Gone"; and that it was further his intention to unfairly and unreasonably deprive the Wife of the opportunity to share in the revenues derived by Lucky Star Advertising, Inc.
Using the date December 31, 2000 (slightly more than thirteen months after the petition was filed), the trial court found "that based on the net profit of Lucky Star Advertising, Inc., of $238,462[1] for the year ended December 31, 2000, it is not unreasonable to conclude that as per the corporation's income tax return the business would be valued at approximately $385,000 which represents three times net earnings." Based upon this conclusion, the *501 court ordered that the husband pay the wife $192,500, which is half of the value of Lucky Star.
Also the subject of disagreement between the parties was whether a house in Corpus Christi, Texas, the husband bought in 1981 for $32,000 was a marital asset. The husband sold the house for $48,500 after the petition for dissolution was filed. It was never titled in the wife's name. Although the husband testified that the rental income was used to pay down the mortgage, according to the trial court, the wife testified more credibly that marital funds were used both to pay the mortgage and do maintenance and repairs on the home.
With respect to the house in Texas, the court found that it was not a marital asset but that the wife had an equitable interest[2] in the house and awarded her $8,250.
In the wife's counter petition, she included a claim against the husband on a promissory note for $100,000 which was dated December 31, 1992, one year before they married. The note was to be repaid by Caruso Television Marketing (Caruso) within two months. If it was not paid by Caruso, the husband was a personal guarantor with a repayment due date of March 1, 1993.[3] The husband defended on the ground that the wife had forgiven the note and also never made a demand prior to the filing of her counter petition. The court found that the claim on the note was barred by the statute of limitations.

ANALYSIS
The husband asserts that the petition for dissolution was filed one day before Lucky Star was incorporated and two weeks before the husband signed the licensing agreement for marketing "Scratch Be Gone." Based on that assertion, he argues that Lucky Star was not a marital asset under section 61.075(6), Florida Statutes (1999), and, therefore, not subject to equitable distribution. The wife responds that even though the above dates are accurate, the husband's attempt to defraud her of her share of Lucky Star was not condoned by the trial court and the trial court ignored the scheme because the right to begin shooting a commercial existed in September 1999.
Section 61.075(6) provides:
(6) The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage. The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances. Different assets may be valued as of different dates, as, in the judge's discretion, the circumstances require.[4]
*502 The evidence showed that on the day after filing the petition, the husband used $2,500 of marital monies toward the start-up of Lucky Star. He had received a retainer to shoot the commercial before the petition was filed. The retainer was to be returned if the husband did not shoot the commercial. Lucky Star was actually incorporated on November 17, 1999, the day after the petition was filed. The contract for "Scratch Be Gone" was not executed until November 30, 1999. The husband testified that he purposely filed his petition before starting his new company.
The trial court considered all this evidence and concluded that Lucky Star was a marital asset. The husband insists that because Lucky Star was not incorporated until after the date of filing, it did not exist before the date of filing and could not be considered a marital asset.
As noted above, section 61.075(6) was amended on May 14, 1994, to establish a "cut-off" date for determining assets and liabilities that can be identified or classified as marital assets and marital liabilities. The dates that can be used for the determination of marital assets are: (1) the earliest date the parties entered into a valid separation agreement, (2) such other date as may be expressly established by such agreement or (3) the date of the filing of the petition for dissolution of marriage. In the instant case, the only operative date is November 16, 1999, the date of the filing of the petition for dissolution. Prior to the amendment of section 61.075(6), there was no such cut-off date and the trial court could use any other date that it determined, in its discretion, was just and equitable under all the circumstances of the case. The trial judge was not limited to the date that the parties entered into a separation agreement or any other date as might have been established by such an agreement or the date of filing the petition for dissolution of marriage.
In the instant case, the fact that the wife participated in a meeting with the husband and Kozel and urged her husband to adopt "Lens Buff" as a product to market and the fact that $2,500 of the marital funds was used in combination with the $22,000 invested by Kozel to begin the initial creation of Lucky Star does not transform this into a marital asset. Although Lucky Star was incorporated a day after the petition for dissolution was filed, it was not until November 30, 1999, that a licensing agreement to market the product known as "Lens Buff" was signed. It was not until February of 2000 that Lucky Star produced a commercial for "Lens Buff" and changed the product's name to "Scratch Be Gone." It was not until the fall of 2000, after two failed commercials were produced, that Lucky Star began to successfully market the product.
"When the Legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of law, unless a contrary indication is clear." Mangold v. Rainforest Golf Sports Ctr., 675 So.2d 639, 642 (Fla. 1st DCA 1996). We must give due significance to such a change. See Kelly v. Retail Liquor Dealers Ass'n of Dade County, 126 So.2d 299, 301 (Fla. 3d DCA 1961). If the statute is to be given its plain meaning and the statutory amendment is to be given its due significance, then Lucky Star cannot be considered a marital asset because the "cut-off" date is November 16, 1999.
It was error for the trial court to equitably distribute assets acquired after the filing of the petition for dissolution. See Huber v. Huber, 687 So.2d 42 (Fla. 5th DCA 1997). Although the trial court has discretion under section 61.975(6) in determining *503 the valuation date for marital assets and liabilities, that discretion does not extend to permit the court to determine assets acquired after the filing of the petition to be marital assets. See Langevin v. Langevin, 698 So.2d 601 (Fla. 4th DCA 1997).
The instant case is distinguishable from this court's decision in Cummings v. Cummings, 719 So.2d 948 (Fla. 4th DCA 1998). In Cummings, a husband and a partner contracted to purchase the health care company prior to the dissolution petition being filed. All the arrangements had been made to close on the transaction, including financing, long term leases and the like. The evidence supported a conclusion that there was an enforceable agreement to purchase, which was in place on the date the petition for dissolution was filed. This court held that the trial court did not improperly consider the husband's interest in a health care corporation as a marital asset even though the purchase of the health care corporation did not officially close until eleven days after the filing of the petition for dissolution. The evidence in Cummings showed that the husband had a vested contractual right to the stock in the health care corporation prior to the filing of the petition for dissolution and, therefore, the stock could be valued as a marital asset subject to equitable distribution. However, in the instant case, there was no such vested contractual right prior to the filing of the petition for dissolution because the licensing agreement was not signed until November 30, 1999.
The instant case is also distinguishable from this court's decision in Roberts v. Roberts, 689 So.2d 378 (Fla. 4th DCA 1997). In Roberts, this court decided whether in a dissolution, attorney's fees earned on contingency fee cases by the husband who was a personal injury trial lawyer could be considered a marital asset subject to equitable distribution. We held that in those cases settled prior to the filing of the petition for dissolution where attorney's fees were earned but not yet collected, those fees could be considered marital assets for the purpose of equitable distribution. The husband in Roberts had a vested right to the fees from those cases settled prior to the filing of the petition for dissolution. In contrast, prior to November 16, 1999, Lucky Star had produced nothing and had no earnings.
We, therefore, hold that the trial court erred in finding that Lucky Star was a marital asset subject to equitable distribution. We need not address the husband's assignments of error concerning the date or method of valuation[5] of Lucky Star since we hold as a matter of law that it is not a marital asset.
We now turn our attention to the husband's assertion that the trial court erred in awarding the wife an equitable interest in the house located in Corpus Christi, Texas. By definition, the Corpus Christi house owned by the husband is a nonmarital asset because he bought it with his own funds in 1981 prior to the parties' marriage in 1993. See § 61.075(5)(b)1, Fla. Stat. (1999). That statute also provides that "[a]ll income derived from non-marital assets during the marriage unless the income was treated, used, or relied upon by the parties as a marital asset" is a nonmarital asset. See § 61.075(5)(b)3, Fla. Stat. (1999).
Section 61.075(5)(a)2 also provides that marital assets include "[t]he enhancement in value and appreciation of nonmarital *504 assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both...." Furthermore, passive appreciation in market value of nonmarital property during the marriage is not a marital asset. See Straley v. Frank, 612 So.2d 610, 612 (Fla. 2d DCA 1992). See also Cole v. Roberts, 661 So.2d 370 (Fla.4th DCA 1995).
The wife asserts that the trial court was within its discretion in awarding a "special equity" in the house to her. She cites Sizemore v. Sizemore, 767 So.2d 545 (Fla. 5th DCA 2000). Sizemore does not involve real property but a stock account and it does not mention special equity. In the instant case, when the wife's counsel attempted to assert a "special equity" in the house, the husband's lawyer objected on the grounds that it was not pled and the trial court sustained the objection. Without pleading a special equity or the issue being tried by consent, a party should not be awarded a special equity. See Collins v. Collins, 737 So.2d 1204, 1205 (Fla. 5th DCA 1999); Barlow v. Barlow, 562 So.2d 425 (Fla. 2d DCA 1990).
As the husband asserts, there was no testimony as to any of the amounts paid on the mortgage and as to how much the mortgage was paid down during the marriage. The husband testified that upon the sale of the home for $48,500, the payoff for the mortgage was $34,000. He bought the house for $32,000 and owned it for twenty years when he sold it.
The trial court subsequently found that the wife had an "equitable interest" in the house because marital funds were used to pay the mortgage and maintain and repair the house. She was awarded $8,250, which is half the amount the house appreciated from the purchase price to the amount of sale. In giving her a special equity, the trial court abused its discretion because by definition, special equity is a contribution of services or funds over and above normal marital duties. See Dyson v. Dyson, 597 So.2d 320 (Fla. 1st DCA 1992). There was no such evidence presented.
If the award was for the enhancement in value resulting from the contribution of marital funds during the marriage, the amount awarded was not supported by substantial competent evidence showing whether the appreciation in value was passive or a result of improvements paid for with marital monies.
With respect to the wife's cross-appeal, we find the issues raised to be without merit. In light of this court's decision regarding the parties' marital assets, we reverse and remand for consideration of any additional evidence that may be presented and for reconsideration of the equitable distribution scheme.
STEVENSON, J., concurs.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
I write to emphasize that the 1994 amendment to section 61.075(6), Florida Statutes "changed the cut-off date for determining the nature of assets and liabilities as marital or nonmarital." McHugh v. McHugh, 702 So.2d 639, 642 (Fla. 4th DCA 1997). See Ch. 94-204, § 1, Laws of Fla. Under the prior statute, the trial court had the discretion to both identify and value marital assets. See id. The current statute establishes a bright line rule for the identification of marital assets; in the absence of a "valid separation agreement," the "cut-off date for determining" marital assets is "the date of the filing of a petition for dissolution of marriage." § 61.075(6), *505 Fla. Stat. (2000); see Boulis v. Boulis, 754 So.2d 810, 811 (Fla. 4th DCA 2000). The clear language of the statute does not allow for flexibility in the identification of a marital asset. This case stands for the proposition that for an asset to be characterized as a marital asset, it must be in existence on the statutory "cut-off date."
I agree with the majority's conclusion that Lucky Star Advertising, Inc. was not a marital asset. This does not preclude the trial court from using some other tool in its equitable belt to acknowledge and value the wife's contribution to "Scratch Be Gone's" creation.
Finally, concerning the Texas home, we are constrained by the record, which does not explain how a house purchased for $32,000 in 1981, had a mortgage payoff of $34,000 when it was sold after the petition for dissolution was filed in 1999.
NOTES
[1] This is a typographical error as the amount is $128,462.
[2] The wife did not make a claim for an equitable interest in this house.
[3] The trial court was mistaken in the final judgment that the due date was March 2, 1997.
[4] Prior to May 14, 1994, this section provided:

The date for determining marital assets and liabilities and the value of such assets and the amount of such liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be established by such agreement, or the date of the filing of a petition of dissolution of marriage, unless the trial judge determines another date is just and equitable under the circumstances.
[5] We note that although we do not reach the method of valuation, there was no competent substantial evidence to support the trial court using the net assets for the year ending December 31, 2000, and multiplying that figure by three.