832 So.2d 125 (2002)
Diane E. LEEDS, Appellant,
v.
Michael A. ADAMSE, Appellee.
No. 4D01-2161.
District Court of Appeal of Florida, Fourth District.
August 28, 2002.
Rehearing Denied October 18, 2002.
*126 William P. Thomas, Plantation, and Diane E. Leeds, West Palm Beach, for appellant.
Martin H. Colin of Law Offices of Martin H. Colin, Lake Worth, for appellee.
MAY, J.
The wife appeals from an amended final judgment of dissolution of marriage, raising eight issues for review. We reverse the trial court's classification of the Rooms to Go debt as a marital liability. We affirm the remaining issues. However, the point challenging the trial court's inclusion of a residency restriction clause in the final judgment of dissolution calls our attention to the "catch 22" situation created by their absence. We address this issue as well.
The husband purchased furniture at Rooms To Go and incurred a debt of $2,607 four days after the wife filed the petition for dissolution. The wife argues, and we agree, that section 61.075(6), Florida Statutes (2001), establishes a cut-off date for determining whether assets and liabilities are classified as marital. Section 61.075(6) provides in part:
The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage.
This Court recently held that this provision should be given its plain meaning. Caruso v. Caruso, 814 So.2d 498 (Fla. 4th DCA 2002). It establishes a "bright line" rule for classifying marital assets and liabilities. Id. at 504. The Rooms to Go purchase crossed the bright line that was drawn by the filing of the petition for dissolution. The trial court erred in classifying it as a marital liability for purposes of equitable distribution.
We affirm the trial court's order in all other respects. However, because of its importance, we write to express our opinion *127 on the inclusion of a residency restriction clause in the final judgment.
The amended final judgment provides:
9. The parties shall have shared parental responsibility of the two minor children with the Wife being the primary residential parent and the Husband having rights of reasonable visitation upon reasonable notice. By "shared parental responsibility" the parties agree that each shall retain full parental rights and responsibilities with respect to their children and that both parents shall confer so that major decisions affecting the health, education and welfare of the children will be determined jointly....
10. The primary residence of the parties' minor children, which is currently located in Palm Beach Gardens, Florida shall not be removed from Palm Beach County, Florida on a permanent basis without written consent of the Husband or prior Court order....
The wife contends the trial court erred when it included this residency restriction clause as she did not indicate an intent to move. We disagree.
We noted in Bartolotta v. Bartolotta, 703 So.2d 1229, 1230 (Fla. 4th DCA 1998), that "[s]everal courts have held that a relocation by the custodial parent without prior approval of the court is not per se improper where the final judgment does not prohibit such location." In other words, absent a residency restriction clause, custodial parents are generally free to relocate with their children and often do so without notifying the non-custodial parent. See, e.g., Wilson v. Roseberry, 669 So.2d 1152 (Fla. 5th DCA 1996) (mother's relocation was not per se improper because the parties' dissolution judgment did not prohibit the mother from relocating with the children); Fabre v. Levine, 618 So.2d 317 (Fla. 1st DCA), review denied, 629 So.2d 132 (Fla.1993) (no restriction on change in residence unless restriction is contained in final judgment of dissolution); and cf. Hayes v. Hayes, 578 So.2d 54 (Fla. 2d DCA 1991) (where final judgment of dissolution does not restrict residence of minor child, mere assertion without more that custodial parent intends to move to foreign state not substantial change in circumstances supporting change of custody); Zugda v. Gomez, 553 So.2d 1295 (Fla. 3d DCA 1989) (in absence of compelling circumstances custodial parent's move to foreign state not a substantial change of circumstances supporting change of custody).
The Third District Court of Appeal has held that it is improper to include in a final judgment a clause which prohibits either party from removing the children from the county absent one of the parties seeking to relocate. See Young v. Young, 698 So.2d 314 (Fla. 3d DCA 1997). We note that the clause in this case prohibits relocation and not the temporary removal of the children and is therefore less restrictive than the clause in Young. However, we believe that the absence of such a clause creates the "catch 22" situation which the inclusion of such a provision avoids.
The "catch 22" scenario unfolds as follows. Absent a residency restriction clause, the custodial parent is free to move the children without the consent of, or even notice to, the non-custodial parent. Bartolotta, 703 So.2d at 1229. A trial court is prohibited from including a residency restriction clause in a final judgment unless the custodial parent seeks to relocate. Young, 698 So.2d at 314. An intent to relocate is often first revealed when the move takes place. At that point, the non-custodial parent's only option is to seek a modification of custody. However, to secure *128 a modification of custody, he or she must show a substantial change of circumstances, and that the modification will be in the best interest of the children. § 61.13(1)(a) Fla. Stat (2001). Until recently, relocation of the children without notice or consent was not a substantial change of circumstances that would support modification of the custody provisions of a final judgment. Zugda, 553 So.2d at 1295. The non-custodial parent is up the custody creek without the proverbial paddle.
This "catch 22" scenario has been reduced by the recent amendment of section 61.13. It now provides that refusal to honor a non-custodial parent's visitation rights without just cause will support a modification of custody. But, the non-custodial parent must still show that the modification is in the best interest of the children. § 61.13(4)(c)5 Fla. Stat. (2001). Boiled down to its essentials, under existing law, a custodial parent can conceal his or her intent to relocate the children, then after entry of the final judgment relocate to a place for enough away to effectively deny visitation to the non-custodial parent, and leave the non-custodial parent with the uphill battle.
At that point, much has changed, and an element of greatly increased hostility has been injected into the case. The judge's role is transformed from a thoughtful consideration of statutory criteria before the move to a fragile balancing act. The court must consider the significant economic factors inherent in a relocation, such as the purchase/sale of a residence, rent and utility deposits, school enrollment, and many other expenditures made by the custodial parent who relocates. The court must also consider the additional disruption of the children's lives that will occur if the court orders the custodial parent to return, or, by modifying custody, orders the children to be relocated a second time, this time without the presence and support of the parent with whom the children have lived. The longer the relocated parent can delay resolution of the issue, the greater the impact on the children of an additional relocation. In many cases, consideration of these factors, particularly those relating to disruption of the children's lives, actually bolsters the position of the relocated parent. The circumstances to be reviewed have already altered the pre-existing status quo.
For a non-custodial parent to be guaranteed of notification before a relocation takes place, a residency restriction clause must be in existence by agreement or order. All that an inclusion of such a provision will do to is allow the parties to either agree to the move or request leave of court to relocate. This will allow the trial court to review the factors outlined in section 61.13(2)(d), Florida Statutes (2001), in an objective and thoughtful manner instead of having to address these sensitive issues after the fact. It will prevent the infamous flights in the night that send families into the land of panic, chaos, and hostility, and which cause such disruption in the lives of children. We hold that a trial court has the discretion to include such a clause in a final judgment even absent evidence that the custodial parent intends to move. In so doing, we note conflict with the Third District Court of Appeal in Young.
We distinguish our decision in this case from our decision in Bartolotta. The long history and specific facts of that case dictated its result. Unlike Bartolotta, in this case the trial court has taken preventative action. The inclusion of the provision in this case will avoid the potential of duplicating the scenario in Bartolotta. As Judge Gross noted in his dissent: "To routinely allow relocation before it could *129 be fully evaluated under the statutory criteria would generally favor the party seeking the move ...." Id. at 1230.
We leave the decision of whether to include these provisions to the sound discretion of the trial courts. The judgment is reversed in part and affirmed in part.
SHAHOOD and GROSS, JJ., concur.