824 So.2d 315 (2002)
Phillip JENSEN, Appellant,
v.
Laura JENSEN, Appellee.
Nos. 1D01-4024, 1D01-4731.
District Court of Appeal of Florida, First District.
August 28, 2002.
*316 Paula L. Walborsky, Esq., Mari M. Presley, Esq., and Mary A. Kane of Walborsky, Presley and Kane, P.A., Tallahassee, for Appellant.
Joseph R. Boyd, Esq. of Boyd, Lindsey & Sliger, P.A., Tallahassee, for Appellee.
LEWIS, J.
Appellant, Phillip Jensen, appeals the final judgment of dissolution of his marriage to Laura Jensen, appellee. Appellant raises three arguments on appeal. Appellant first argues that the trial court erred in holding the unvested stock options, received by appellant from his employer during the marriage, to be marital property subject to equitable distribution. We affirm, holding that appellant's unvested stock options acquired during the marriage prior to the date of the filing of the petition for dissolution of marriage constitute marital property subject to equitable distribution. In his second argument, appellant contends that the trial court erred in not applying the substantial parenting formula to his secondary parenting of the parties' two children, resulting in an incorrect child support obligation determination. As to this issue, we reverse and remand to the trial court for adjustment of appellant's child support obligation pursuant to section 61.30(11)(b)10., Florida Statutes (2001). Finally, appellant argues that the trial court erred in ordering him to pay a portion of appellee's attorney's fees and costs. On cross-appeal, Laura Jensen argues that the trial court improperly granted additional parenting time to appellant. We affirm appellant's third issue and the issue on cross-appeal without further discussion.
The parties were married for approximately seven years. Early in the marriage, appellee worked for a government agency, earning $29,000 per year. Appellant worked as a computer technician, earning $41,000 per year. Appellant later became employed with Cisco Systems and began earning a base salary of $158,000 per year, plus stock options. Appellee voluntarily left full-time employment in order to stay home with the parties' two children, who were four and six at the time of trial.
During the marriage, Cisco Systems granted several thousand stock options to appellant. These stock options greatly increased appellant's income. For the years 1998, 1999, and 2000, the parties' income was $198,019, $387,547, and $434,341 respectively. *317 The trial court divided the vested stock options, or those capable of being exercised, between the parties without dispute. The trial court found that, prior to the time of the filing of the dissolution petition, Cisco Systems had also granted appellant 23,700 unvested stock options, of which 8,876 had vested prior to the dissolution proceedings.
Pursuant to a standard option contract between appellant and his employer, these unvested options, while granted to appellant in recognition of past commendable service, are contingent upon appellant's continued service with either Cisco Systems or any of its subsidiaries. Thus, if Cisco Systems had terminated appellant's employment one day following the filing of the dissolution petition, or if appellant had voluntarily terminated his employment, the entitlement to such options would have been rescinded. However, if appellant were to pass away, the options could be exercised by his estate. Moreover, if appellant were to become disabled, he would then be entitled to exercise such options.
During the dissolution proceeding, both parties' expert witnesses testified that the unvested stock options could not be valued or transferred due to their nature. The trial court, after considering such evidence, ruled that the unvested stock options were marital property subject to equitable distribution. The trial court divided the 23,700 unvested options equally between the parties by imposing a constructive trust upon appellant for appellee's benefit. Pursuant to such order, as the options become vested, appellant must inform appellee by writing and exercise all or a part of the options as directed by appellee. Appellee is to be responsible for all federal income taxes incurred by appellant in exercising the options. In imposing a constructive trust on appellant, the trial court expressly retained jurisdiction over the parties until the expiration of all unvested options. The trial court's equitable distribution totaled $521,761 to appellant and $472,629 to appellee. The trial court denied appellee's request to order appellant to pay a lump sum amount to equalize the marital assets. The trial court predicated this denial upon its determination that the unvested stock options constituted marital property.
Regarding the child custody issue, the trial court ordered shared parental responsibility. Appellant is to have the children on alternate weekends, Friday after school through Monday morning. Appellant is also to have the children each Wednesday night. While the trial court's normal parenting schedule does not include awarding Wednesday nights, the trial court awarded such after appellant's many requests. For Spring Break and Thanksgiving, the children are to be with appellant in odd-numbered years and with appellee in evennumbered years. For Christmas recess, the parties are to each have the children for one week. During the summers, each party has the right to the children in alternating weeks.
Subsequent to the termination of the bridge-the-gap alimony, the trial court ordered appellant to pay $1,820 per month in child support. The court, noting that its normal parenting schedule did not equate to substantial parenting time for purposes of adjusting the child support obligation, ruled that its modified parenting schedule, even with the additional Wednesday nights, did not constitute substantial parenting time either. Following the dissolution order, the court denied appellant's Motion for Rehearing regarding this issue. This appeal followed.
The issue of whether unvested stock options may constitute marital assets is an issue of first impression in Florida. Appellant argues on appeal that the unvested stock options are not marital assets *318 because they are incapable of being valued or transferred. Appellant further argues that the Legislature did not provide for such treatment in its definition of "marital assets."
Pursuant to 61.075(5)(a), Florida Statutes (2000), "marital assets and liabilities" include:
1. Assets acquired and liabilities incurred during the marriage, individually by either spouse or jointly by them;
2. The enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both;
3. Interspousal gifts during the marriage;
4. All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profitsharing, annuity, deferred compensation, and insurance plans and programs; and
5. All real property held by the parties as tenants by the entireties, whether acquired prior to or during the marriage, shall be presumed to be a marital asset.
(emphasis added).
"Nonmarital assets and liabilities" include:
1. Assets acquired and liabilities incurred by either party prior to the marriage, and assets acquired and liabilities incurred in exchange for such assets and liabilities;
2. Assets acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets;
3. All income derived from nonmarital assets during the marriage unless the income was treated, used, or relied upon by the parties as a marital asset; and
4. Assets and liabilities excluded from marital assets and liabilities by valid written agreement of the parties, and assets acquired and liabilities incurred in exchange for such assets and liabilities.
§ 61.075(5)(b), Fla. Stat. (2000).
While the Legislature did not expressly provide for the treatment of stock options in sections 61.075(5)(a)-(b), Florida Statutes, Florida courts have been called upon to determine the nature of vested stock options in the realm of dissolution proceedings. In Seither v. Seither, 779 So.2d 331, 333 (Fla. 2d DCA 1999), the Second District, in upholding the trial court's determination that vested stock options could be considered as income for alimony purposes instead of being treated as assets, noted that section 61.075(5)(a)4., Florida Statutes, broadly defines "marital assets." See also Brown v. Brown, 591 So.2d 1043, 1044 (Fla. 1st DCA 1991) (finding no abuse of discretion in trial court's order that distributed husband's vested stock options); Langevin v. Langevin, 698 So.2d 601, 602 (Fla. 4th DCA 1997); Griffing v. Griffing, 722 So.2d 979, 980 (Fla. 5th DCA 1999). Thus, because section 61.075(5)(a)4., Florida Statutes labels "nonvested" benefits, rights and funds as marital assets and the courts' determinations that vested stock options fall within the purview of section 61.075(5)(a)4., we hold that appellant's unvested stock options that accrued during the marriage also come within the definition of "marital assets."
While both expert witnesses in this case testified that appellant's unvested stock options were incapable of being valued or transferred as of yet, the stock options were granted to appellant during the marriage. Contrary to appellant's argument, these stock options are not analogous to personal goodwill, but instead represent *319 appellant's past commendable employment service to Cisco Systems that he provided during the marriage. Appellant's employer sought to reward appellant for his past commendable service, while at the same time, adding incentive for appellant to remain with the company in order to exercise such options. Yet, in the unfortunate circumstance of appellant's death, the option period would have remained open to appellant's estate for one year. Similarly, if appellant became disabled, such options would then vest. Notwithstanding the lack of value, such options that were gained prior to the filing of the dissolution petition do represent assets that were accumulated during the marriage and are, thus, subject to equitable distribution.
We also find support for our holding in the majority of other state courts that have addressed this issue. In Fisher v. Fisher, the Pennsylvania Supreme Court, reversing both lower courts, noted that stock options are a form of deferred compensation that has been earned by the employee. 564 Pa. 586, 769 A.2d 1165, 1168 (2001). In Fisher, the husband received several stock options from his employer during the marriage. Id. at 1167. These options would terminate even upon the husband's death or disablement. Id.
The court in Fisher reasoned that unvested stock options are similar to pension benefits, in that both are awarded to the employee to induce that employee to remain in his or her present employment; otherwise, an employee's compensation would arguably be higher. Id. The court, also relying upon the majority of other states, concluded that unvested stock options that were earned prior to the divorce must be considered marital assets. Id.
Similarly in Green v. Green, the Maryland Court of Special Appeals, in holding that unvested stock options may be considered marital property, reasoned that restricted stock option plans, like pension plans, are a form of employee compensation. 64 Md.App. 122, 494 A.2d 721, 728 (1985). The court also reasoned that the options constituted marital property because the husband acquired such options while he was married. Id. According to the court, although the options have an "unassignable, unsalable" character and no fair market value, they are nonetheless an "economic resource." Id.
Several other state courts have also held that unvested stock options acquired during the marriage constitute marital property. See Richardson v. Richardson, 280 Ark. 498, 659 S.W.2d 510, 513 (1983) (holding that unexercised stock options obtained during the marriage are marital property just like traded options or traded common stock); In re Marriage of Hug, 154 Cal.App.3d 780, 201 Cal.Rptr. 676, 685 (1984) (holding that the trial court did not abuse its discretion in allocating the husband's unvested stock options as marital property); Salstrom v. Salstrom, 404 N.W.2d 848, 850 (Minn.Ct.App.1987) (holding that the trial court properly determined that unvested stock options have marital aspect); Pascale v. Pascale, 140 N.J. 583, 660 A.2d 485, 499 (1995) (holding that, like pension benefits, stock options are a form of deferred compensation for efforts expended during the marriage); Callahan v. Callahan, 142 N.J.Super. 325, 361 A.2d 561, 563-64 (1976) (holding that unvested stock options are a form of compensation and constituted marital property that could be distributed through use of a constructive trust). But see In re Marriage of Moody, 119 Ill.App.3d 1043, 75 Ill.Dec. 581, 457 N.E.2d 1023, 1027 (1983) (holding that unexercised stock options were not marital property); Hall v. Hall, 88 N.C.App. 297, 363 S.E.2d 189, 196 (1987) (holding that stock options not exercisable as of the date of separation and *320 which may be lost as a result of events occurring in the future are never marital property).
We agree with the majority of our sister jurisdictions that have decided this issue and hold that appellant's unvested stock options acquired during the marriage prior to the date of the filing of the petition for dissolution of marriage, as set forth in section 61.075(6),[1] Florida Statutes, are marital property subject to equitable distribution. While the unvested stock options in this case are contingent upon certain events transpiring, such as appellant's continued employment, these options were granted to appellant during the marriage. If appellant had not performed so commendably in his employment during the marriage, such options would arguably not have been granted to him. While these options will now vest subsequent to the filing of the dissolution petition, they represent past commendable employment service rendered by appellant while the marriage was intact. Therefore, regardless of any necessary contingencies, we affirm the trial court as to this issue.
In affirming the trial court, we find that appellant's reliance on Caruso v. Caruso, 814 So.2d 498 (Fla. 4th DCA 2002), is misplaced. Appellant argues that, because the Fourth District Court of Appeal held that contractual rights that vest subsequent to the date of the filing of a dissolution petition are not marital assets, this Court should interpret that holding to mean that unvested stock options that do not vest until after the petition filing are not marital assets as well. In Caruso, the husband formed a corporation one day after the dissolution petition was filed. Id. at 500. The Fourth District held that the trial court incorrectly found the corporation to be marital property, notwithstanding the fact that the wife had participated in the meeting with the husband and a potential investor prior to the dissolution. Id. at 502-03. According to the Fourth District, while the trial court had discretion to determine the valuation date for marital assets, that discretion did not permit the court to determine assets acquired after the filing of the dissolution petition. Id.
Caruso is distinguishable from the case at bar and, as such, we do not find it persuasive in this instance. Appellant actually received the stock options during the marriage. Appellant and his employer did not merely negotiate what the proposed option contract would encompass. In contrast, Caruso dealt only with the negotiations that occurred prior to the filing of the dissolution petition. If appellee had only accompanied appellant during negotiation talks with appellant's employer, we would find it far more difficult to hold that the trial court acted within the reasonable bounds of its discretion and would possibly find Caruso persuasive. Yet, because appellant's employer granted him the options during the marriage, we find appellant's reliance on Caruso to be misplaced.
While we hold that appellant's unvested stock options earned during the *321 marriage prior to the filing of the dissolution petition constitute marital property, the challenge is determining how those options should be distributed between the parties. In Fisher, the Pennsylvania Supreme Court, agreeing with the lower court that it is impossible to ascribe a meaningful value to unvested stock options, described three potential approaches of distribution. 769 A.2d at 1169. The first approach, labeled "deferred distribution," would serve to exclude the options from the present distribution but hold the case open for as long as necessary to distribute the options when their value becomes ascertainable. Id. The second approach, labeled "immediate offset," would establish a present value for the options and distribute that value in accordance with each party's marital proportion. Id. The third approach, which would serve to make the value of the options immaterial, would distribute the options themselves according to the parties' marital proportions. Id.
The court in Fisher found the "deferred distribution" approach to be unavoidable because of the lack of a possible valuation for the unvested options and because the options could not be transferred. Id. at 1170. Here, the trial court imposed a constructive trust upon appellant to keep half of the options for appellee's benefit, expressly reserving jurisdiction to enforce the provisions of the trust. See Callahan, 361 A.2d at 564 (holding that a constructive trust is appropriate in the case where transfer of the options would not be profitable, possible or convenient). Both expert witnesses in this case testified that the unvested stock options could be neither valued nor transferred. Thus, both the "immediate offset" and the third approach would not be possible in this case. Accordingly, we find that the trial court did not abuse its discretion in imposing a constructive trust, which is in essence a deferred distribution plan, because it was the most practical method of distributing the unvested stock options.
This Court has approved the use of deferred distribution plans in cases involving both vested and unvested pension benefits. See DeLoach v. DeLoach, 590 So.2d 956, 964 (Fla. 1st DCA 1991); Kirkland v. Kirkland, 618 So.2d 295, 297 (Fla. 1st DCA 1993). We take note though of the Florida Supreme Court's opinion in Boyett v. Boyett, 703 So.2d 451, 452 (Fla.1997). In Boyett, the supreme court held that the valuation of a vested retirement plan does not include any contributions made after the original judgment of dissolution and, thereby, disapproved both DeLoach and Kirkland to the extent those cases were in conflict with this holding. The supreme court reasoned that utilization of the DeLoach formula of deferred distribution would include contributions to the pension plan and accrual of benefits subsequent to the date of the original judgment of dissolution. See Olsen v. Keefer, 714 So.2d 1165, 1166 (Fla. 1st DCA 1998) (following Boyett in holding that the trial court erred in utilizing a deferred distribution plan for the husband's retirement plan, which included benefits that accrued subsequent to the dissolution).
We find this case and the issues involved to be distinguishable from Boyett. The status of unvested stock options in equitable distribution is one of first impression in Florida. The deferred distribution approach for a stock option that cannot be valued as of yet is the only prudent and plausible approach to adopt. While trial courts may be forced to retain jurisdiction in such cases, there is little chance that this will equate to retaining jurisdiction until a former spouse retires from employment. At the time of this appeal for instance, 8,876 unvested stock options had already vested.
*322 More importantly, the trial court did not include in its distribution any unvested stock options that appellant may acquire in the future. In contrast to the pension benefits dealt with in Boyett, deferring distribution of unvested stock options would not include any contribution or accrual of benefits that would arise subsequent to the filing of the petition for dissolution. Accordingly, we hold that the deferred distribution approach is proper when distributing unvested stock options as marital property.
Turning now to the second issue on appeal, appellant argues that the trial court erred in not applying the substantial parenting formula to appellant's secondary parenting, according to section 61.30(11)(b)10., Florida Statutes (2001). Pursuant to section 61.30(11)(b), Florida Statutes (2000), if a shared parental arrangement provides that a child spends "a substantial amount of time" with each parent, the court shall adjust the noncustodial parent's child support obligation according to the statutory directives. In 2001, the Legislature amended this section by defining "substantial amount of time" to mean that "the noncustodial parent exercises visitation at least 40 percent of the overnights of the year." § 61.30(11)(b)10., Fla. Stat. (2001).
Because this issue regards the trial court's proper application of law, we review this issue de novo. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980). While appellee filed the dissolution petition prior to the 2001 legislative amendment, the Fourth District Court of Appeal has since held that section 61.30(11)(b)10., Florida Statutes (2001) is remedial legislation that can be retroactively applied since the amendment furthers the remedy or confirms the rights already established in section 61.30, Florida Statutes. Arze v. Sadough-Arze, 789 So.2d 1141, 1144-45 (Fla. 4th DCA 2001). See also Guttler v. Guttler, 798 So.2d 888 (Fla. 4th DCA 2001); Undercuffler v. Undercuffler, 798 So.2d 867 (Fla. 4th DCA 2001).
We agree with the Fourth District Court of Appeal and find that the 2001 legislative amendment does confirm the rights in section 61.30, Florida Statutes. Prior to the amendment, section 61.30(11)(b) merely read "substantial amount of time with each parent" without defining what this term constituted. The 2001 amendment defines such term to mean that "the noncustodial parent exercises visitation at least 40 percent of the overnights of the year." § 61.30(11)(b)10., Fla. Stat. (2001). Thus, the 2001 amendment is remedial in nature and may be retroactively applied.
On appeal, appellant argues that the trial court awarded him the children for 46.5 percent of the overnights in a year. Our review of the record reveals that appellant will have the children for approximately 40 percent of the overnights in a year, even when Spring Break and the Thanksgiving holiday are not included. While the trial court's normal parenting schedule, which did not include Wednesday nights, may not have constituted substantial parenting time, the inclusion of the additional nights greatly increased appellant's time with the children. Thus, because we hold that section 61.30(11)(b)10., Florida Statutes (2001) is remedial, we reverse and remand appellant's child support obligation to the trial court for further computation and adjustment.
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings consistent with this opinion.
ALLEN, C.J., and BROWNING, J., concur.
NOTES
[1] For purposes of equitable distribution, a court may classify an asset as a "marital asset" if such asset is acquired by a spouse pursuant to certain cut-off deadlines set forth in section 61.075(6), Florida Statutes (2000). Section 61.075(6), Florida Statutes (2000) provides:

The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage.
(emphasis added).