# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case Nos. 6D2023-0544, 6D2023-2519
CONSOLIDATED
Lower Tribunal No. 2019-DR-002765-FM01-XX

_____

CHRISTOPHER T. KNOTT,

Appellant,

v.

TRACEY L. KNOTT,

Appellee.

_____

Appeal from the Circuit Court for Collier County.
Ramiro Mañalich, Judge.

September 6, 2024

WOZNIAK, J.

In this consolidated appeal,[1] Christopher Knott ("Former Husband") appeals

a second amended final judgment following a final hearing dissolving his marriage

---

[1] Former Husband timely appealed both an amended judgment of dissolution and a second amended judgment in the underlying case. This Court sua sponte consolidated the appeals.

to Tracey Knott ("Former Wife").[2] Former Husband argues that the trial court reversibly erred when it (1) determined it did not have jurisdiction to consider the issue of partition of the marital home, (2) included dissipated assets in the equitable distribution scheme without making any findings of intentional misconduct, (3) misclassified nonmarital assets as marital, (4) based Former Husband's net income on a historical figure when uncontroverted evidence showed a steady decline of same, and (5) failed to incorporate a tax liability in its equitable distribution scheme. His arguments have merit and necessitate reversal and remand for further proceedings consistent herewith.[3]

In seeking to dissolve their eighteen-year marriage, the parties presented the court with testimony, both from themselves and from their experts, as to the value of their assets, their liabilities, and their income. The trial court, after consideration of the testimony and evidence, distributed certain marital assets to Former Husband, including (1) his business, Naples Security Solutions, (2) a Bank of America account, (3) the rental deposit on his current residence, (4) two motorcycles, and (5) post-petition retirement contributions. Former Wife received the marital residence and a share of other bank accounts not germane to this appeal. The trial court also

---

[2] This case was transferred from the Fifth District Court of Appeal to this Court on January 1, 2023.

[3] Former Husband also argues that the trial court erred by excluding certain evidence presented by his expert. We affirm that issue without discussion.

awarded Former Wife permanent, periodic alimony and retroactive alimony from November 2020 to the date the final judgment was entered. We address first the classification and distribution of marital assets, then turn to the issues of alimony and tax liability.

I. Marital Assets

A. The Marital Home

At trial, the parties stipulated that the marital home was valued at $1,020,000, with $393,092 remaining on the mortgage, for a total equity of $626,908. Former Husband sought partition of the marital home and alleged in his counterpetition that the home was owned in "joint tenancy, tenancy in common, tenancy by the entirety, or some other form of co-ownership" with Former Wife. Former Wife testified that she wanted the marital home to be awarded to her and represented that she would refinance the mortgage debt to remove Former Husband's name. Alternatively, she requested that she be awarded exclusive use and occupancy until their youngest child turns eighteen and sought a monthly contribution from Former Husband to pay for the mortgage during that period. The trial court awarded the residence to Former Wife and ordered her to "make reasonable efforts within six months" from entry of the final judgment to refinance the marital home and remove Former Husband's name. In so ruling, the trial court found that it lacked jurisdiction to consider Former

Husband's request for partition because he failed to plead the "quantity of each" party's ownership interest in the marital home. The court was incorrect.

Section 64.041, Florida Statutes (2019), requires that the party requesting partition allege "the quantity [of interest] held by each" party.[4] Former Husband did just that. Because parties may plead inconsistent facts or alternative theories in their pleadings, we see no issue with Former Husband's alleging several forms of ownership in the alternative. *See Morales v. Coca-Cola Co.*, 813 So. 2d 162, 164 n.1 (Fla. 4th DCA 2002) ("Parties are entitled to allege alternative inconsistent facts or theories in their pleadings." (citing *Booker v. Sarasota, Inc.*, 707 So. 2d 886, 888 (Fla. 1st DCA 1998))). If Former Husband proved that the marital residence was held by either tenancy by the entireties or joint tenancy, then the "quantity held by each" would have been established. *See Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 53 (Fla. 2001) (explaining that joint tenancies and tenancies by the entireties share the characteristic of unity of interest). Accordingly, Former Husband's allegation is sufficient under section 64.041's mandate that a party plead

---

[4] Partition determinations are reviewed for abuse of discretion. *Green v. Green*, 16 So. 3d 298, 301 (Fla. 1st DCA 2009). However, because the trial court determined it lacked jurisdiction to even consider Former Husband's request for partition, this issue is reviewed de novo. *Lande v. Lande*, 2 So. 3d 378, 380 (Fla. 4th DCA 2008) ("Whether a court has jurisdiction is a question of law which is reviewed de novo.").

each party's quantity of interest in the property underlying the partition claim, and thus, the trial court had jurisdiction.[5]

We, therefore, reverse the award of the marital home to Former Wife and remand for the trial court to consider Former Husband's request for partition.[6]

### B. Naples Security Solutions

Former Husband's business, Naples Security Solutions ("NSS"), was a marital asset. To reach a value for NSS, the trial court used the net asset value method, which calls for the calculation of the value of a business's assets reduced by the value of its liabilities. Critical to this calculation is, of course, the date used for determining these values. This is particularly true here, where the value of NSS's assets on the date the petition for dissolution was filed greatly exceeded the value of its assets shortly before trial.

The trial court chose to use the date that Former Wife petitioned for dissolution as the date on which to value NSS's assets. On that date, NSS had two assets: a business bank account containing $341,197 and a Ford Excursion valued at

---

[5] In so holding, we reject Former Wife's alternative grounds for affirmance.

[6] Former Husband also argues that pleading partition was unnecessary because a trial court has inherent authority to equitably distribute all assets in a dissolution proceeding, including the marital home. *See Ortiz v. Ortiz*, 315 So. 3d 149, 153 (Fla. 2d DCA 2021). Because we hold that Former Husband adequately pled partition, we do not reach the merits of this argument.

$48,000, for a total asset value of $389,197.[7] This would have been sustainable but for the fact that the amount in the business account as of August 26, 2021—four months prior to trial and the date of the most recent statement in evidence—was only $77,633.71, and there was no finding that misconduct had occasioned the reduced value.

Although a trial court has discretion to choose the date of valuation for marital assets, its discretion is properly exercised only after consideration of the facts and circumstances presented. § 61.075(7), Fla. Stat. (2021) ("The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances."); *Perlmutter v. Perlmutter*, 523 So. 2d 594, 594 (Fla. 4th DCA 1987). Here, there was no finding that the value of NSS was dissipated due to spousal misconduct; in fact, Former Wife's expert testified that NSS's value had been steadily declining for several years, and there was no evidence the decline post-filing was attributable to any misconduct. Under these circumstances, the proper asset valuation date was the

---

[7] With respect to NSS's liabilities, Former Wife's expert accountant, Christy Bastian, testified that there were no accounts payable as of the date Former Wife filed her petition. Former Husband's expert accountant, Brett Nesbit, could also not confirm the existence of liabilities or payables owed to NSS as of the date of filing. Nesbit did, however, identify certain liabilities that arose post-petition, including a buyout of a former partner, the payment of legal fees, and the satisfaction of certain IRS liabilities. Bastian concluded that Former Husband's business was in decline from 2019 to 2021.

most recent date for which evidence was provided, and it was an abuse of discretion to find otherwise. *See Roth v. Roth*, 973 So. 2d 580, 584 (Fla. 2d DCA 2008) ("As a general proposition, it is error to include assets in an equitable distribution scheme that have been diminished or dissipated during the dissolution proceedings.").

Accordingly, we reverse this portion of the equitable distribution award and remand for recalculation of NSS's value and for any adjustment in equitable distribution required thereby.

C. Bank of America Account

The value of Former Husband's Bank of America account was $144,408 as of the date the petition for dissolution was filed. The balance as of July 27, 2021, the date of the most recent account statement, was $6,043. The trial court found that it was equitable and just to value the bank account as of the date of filing, basing its decision on Former Husband's ramped up spending during the proceedings. The court noted that Former Husband withdrew only $2,000 in cash in the two years preceding the dissolution but took out $132,000 over the two years that the dissolution action was pending and found that this increase in spending was intentional misconduct.

The trial court's determination that Former Husband's cash withdrawals constituted intentional misconduct justifying the use of the filing date balance meant that the court attributed funds to that account that were no longer there as of the most

7

recent account statement. The use of this pre-diminished account value was error because the court's finding of intentional misconduct was based solely on Former Husband's inability to recall how he spent certain funds.

All the court had before it on this topic was Former Husband's unrebutted testimony that the funds were generally used for living expenses, for his children, and for Former Wife, and Former Wife presented no evidence that such funds were used to the contrary. Although Former Husband could not recall precisely how he had used several large withdrawals, this memory failure is not, without more, competent substantial evidence supportive of a finding of intentional misconduct. *See Roth*, 973 So. 2d at 585 (Fla. 2d DCA 2008) ("[T]o include a dissipated asset in the equitable distribution scheme, there must be evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court must make a specific finding that the dissipation resulted from intentional misconduct.").

Accordingly, we reverse this portion of the equitable distribution award and remand for further proceedings. On remand, the trial court may not include the dissipated value of the account in calculating the equitable distribution thereof.

D. Post-Petition Assets

Former Husband argues that the trial court erred when it determined that several assets he acquired post-petition were marital assets. Former Husband is correct.

8

Section 61.075(7), Florida Statutes (2021), states that "[t]he cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is . . . the date of the filing of a petition for dissolution of marriage." Accordingly, a trial court may not classify an asset purchased after the filing of the petition as marital. This is a bright-line rule. *See Schmitz v. Schmitz*, 950 So. 2d 462, 463 (Fla. 4th DCA 2007); *see also MacPherson v. MacPherson*, No. 6D23-373, 2024 WL 2097928, at *2 (Fla. 6th DCA May 10, 2024) ("[T]he trial court does not have discretion as to the date used to determine the existence of martial assets and liabilities and whether they are subject to equitable distribution. § 61.075(7), Fla. Stat. (2018)."). This is true even if marital funds are used to purchase the post-petition asset. *See Caruso v. Caruso*, 814 So. 2d 498, 502 (Fla. 4th DCA 2002) (holding that it was error for trial court to classify corporation formed post-petition as marital asset even though corporation was only partially financed with marital funds).[8]

In this case, the trial court included the following post-petition assets in its equitable distribution: (1) two motorcycles valued at $32,000; (2) a $6,000 rental deposit; and (3) $35,600 in contributions to Former Husband's retirement account.

---

[8] Although not pertinent here, we acknowledge that the determination that an asset is nonmarital "does not preclude the trial court from using some other tool in its equitable belt" to make an unequal distribution if the evidence supports it. *Murphy v. Murphy*, 313 So. 3d 237, 239 (Fla. 2d DCA 2021) (quoting *Caruso*, 814 So. 2d at 505 (Gross, J., concurring specially)).

This was error. Accordingly, we reverse the equitable distribution award, and on remand, the trial court shall not consider these assets when reexamining its equitable distribution scheme.

II. Alimony

Former Husband argues that it was error for the trial court to base his ability to pay on his historical income when there was unrebutted evidence that his income had declined by the time of trial.

Former Husband is a private investigator and sole owner of NSS. In 2017, NSS had a gross profit of $730,000. Based on that profit, in 2018, Former Husband was compensated in the amount of $100,000, consisting of $82,000 in salary and $18,000 in contributions to his retirement account. That year, Former Husband also received $158,300 in profit distributions. In 2019, for work performed in 2018, Former Husband again took $100,000 as compensation but did not receive a distribution from the profits. In early 2020, for work performed in 2019, Former Husband took out $100,000 from his business account as compensation and received $200,000 in profit distributions. Former Husband testified that his most recent financial affidavit reflected that his gross monthly income was $6,700, or $80,400 annually.

The trial court did not find Former Husband's representation of his income to be accurate or credible and determined instead that his personal income was

$300,000 annually. Additionally, the trial court found that Former Husband "enjoyed in-kind payments made by NSS" for satisfaction of his personal federal income tax obligation in the amount of $18,323, which the court added to Former Husband's income. The trial court then determined that Former Husband's tax obligation on this amount would be $7,974.57 per month, and thus his net monthly income was $18,552.34. The trial court adjusted Former Husband's net monthly income in accordance with his living expenses and found that Former Husband had an ability to pay $10,759.34 per month to Former Wife. After considering all factors under section 61.08, Florida Statutes (2021), the trial court found permanent alimony to Former Wife to be fair and reasonable under the circumstances, awarding her $6,092 per month for each month following the entry of the final judgment. The court also awarded her, at her request, $121,840 in retroactive alimony from November 2020.

Former Husband cites to *Greenberg v. Greenberg*, 793 So. 2d 52 (Fla. 4th DCA 2001), to support his argument that the trial court should not have used his income in the past years to determine his present income. In *Greenberg*, the trial court determined that the former husband's income averaged, for the three years preceding trial, $423,161. However, the uncontroverted evidence was such that the former husband earned less than $400,000 at the time of trial. The Fourth District determined, in the face of that uncontroverted evidence, that the trial court abused

11

its discretion to find that husband's income was more than it was. *Id.* at 56 (citing *Shudlick v. Shudlick*, 618 So. 2d 740 (Fla. 4th DCA 1993)).

Here, the trial court did not average Former Husband's past income but appears to have chosen to use Former Husband's 2019 income as his current income. There is competent, substantial evidence[9] to find that Former Husband's income was $297,800 in 2019. At trial, Former Husband admitted that NSS's bank account had been reduced by $297,800, which represented his income in 2019. Regardless, the evidence showed that his income had decreased thereafter; Former Wife's expert, Bastian, testified that NSS's revenue decreased significantly from 2019 to 2020 and again in 2021. The decrease in NSS's revenue translates to a decrease in Former Husband's income. Accordingly, the trial court's finding that Former Husband's income at the time of trial was $297,800 was not supported by competent, substantial evidence. On remand, the trial court is required to reconsider Former Husband's ability to pay and may take additional evidence as necessary to make that determination. *See Gayer v. Nicita*, 368 So. 3d 533 (Fla. 6th DCA 2023) ("On remand, the trial court may determine whether it requires an additional evidentiary hearing to comply with this opinion or whether the evidence in the record from the

---

[9] A trial court's determination of a party's net income must be supported by competent, substantial evidence. *Chaney v. Fife*, 18 So. 3d 44, 45 (Fla. 1st DCA 2009).

12

final hearing is sufficient for the trial court to enter an amended final judgment that complies with this opinion . . . . ").

We find no error in the trial court's awarding Former Wife retroactive alimony; however, because Former Husband's ability to pay will need to be reexamined, we reverse the alimony award for further proceedings.

III. Tax Liability

Finally, the parties agree that the trial court erred by failing to include a $70,898 joint tax liability in the equitable distribution; on remand, the trial court shall recalculate the equitable distribution accordingly.

IV. Conclusion

We reverse and remand for further proceedings consistent with this opinion. With respect to the equitable distribution scheme, the trial court shall (1) recalculate the value of both NSS and the Bank of America account; (2) incorporate the joint tax liability; (3) not include assets dissipated during the dissolution proceeding; and (4) not consider post-petition assets. Additionally, the trial court shall consider Former Husband's request for partition. Finally, the trial court shall recalculate Former Husband's ability to pay with respect to the alimony award. The trial court may take additional evidence as necessary to determine Former Husband's ability to pay.

REVERSED and REMANDED for further proceedings.

GANNAM, J., and BERLIN, S.D., Associate Judge, concur.


Mark V. Silverio and Parker R. Hall, of Silverio & Hall, P.A., Naples, for Appellant.

Michael M. Shemkus, of Long, Murphy & Shemkus, P.A., Naples, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED