767 So.2d 545 (2000)
Leon L. SIZEMORE, Appellant,
v.
Mary Parker SIZEMORE, Appellee.
No. 5D99-2225.
District Court of Appeal of Florida, Fifth District.
August 18, 2000.
*546 Robert Robins, Daytona Beach, for Appellant.
Joseph Alexander Scarlett, III, DeLand, for Appellee.
PLEUS, J.
Leon Sizemore appeals a final judgment of dissolution of marriage. He raises several issues on appeal, only one of which has merit. Specifically, Leon argues that the trial court erred in failing to award him one-half of the increase in value of a Merrill Lynch CMA stock brokerage account (the CMA account), owned by Mary Sizemore, which increased in value from $1,140,082 to $1,732,275 during the marriage. The parties agree that the non-appreciated value of the CMA account is a nonmarital asset that belongs to Mary; they disagree over the status of the appreciated portion of this fund. Leon submits that the enhancement arose as a result of marital labor and efforts, rendering it a marital asset subject to distribution. We agree and reverse on this point, but affirm in all other respects.
This was a ten-year, second marriage for the parties. They were previously married to each other for almost 14 years. Shortly before the first marriage, Mary received an inheritance from her father. During both marriages, and for most of the time in between, Leon actively managed, or participated in the management of this account at Mary's request. Mary first gave Leon a power of attorney over the CMA account during the first marriage, revoked it when they were divorced in January of 1984, and renewed it again in 1985 while they were still divorced. They remarried in 1988, and the power remained in effect until 1998 when this action arose.
The record reflects that Leon never held a job, and in between trading his wife's stock portfolio, spent most of his time attending motorcycle club meetings, gambling and pursuing other hobbies. He entered the first phase of the parties' marriage penniless and the second phase with only those assets acquired from phase one. Occasionally, Leon would wash and polish his Mercedes automobile and BMW motorcycle, presumably acquired with Mary's money. Otherwise, his work around the house, and his work ethic in general, was next to nothing. Leon was living off Mary's money.
The equitable distribution of assets is governed by section 61.075, Florida Statutes (1999). Marital assets include "[t]he enhancement in value and appreciation of nonmarital assets, resulting from the efforts of either party during the marriage" (emphasis added). § 61.075(5)(a)2., Fla. Stat. (1999). The trial court denied Leon's claim to one-half of the enhanced value of the CMA account, based on three principal findings. First, the court determined that Leon was not authorized to make withdrawals from the account. This finding, however, is refuted by the testimony of both parties. Thus, the finding is not based upon competent substantial evidence, is clearly erroneous, and cannot be used to support the judgment. See § 61.075(3), Fla. Stat. (1999); Doerflein v. Doerflein, 724 So.2d 153 (Fla. 5th DCA 1998); Feltman v. Feltman, 721 So.2d 424 (Fla. 4th DCA 1998). Second, the court determined that Leon failed to keep adequate records of his activity with respect to the account. Lastly, the court found that Leon failed to show how his efforts benefitted the account more than if it had simply been left alone in what, as a whole, was a rising market.
We begin our analysis by noting that there is nothing in Florida law which requires the enhanced value of an asset to be by the highest possible means, without taking into account risk or other factors *547 which may affect the asset. Nor does Florida law require a party to show how his or her actions caused a benefit. All that is required is that the asset's value be enhanced during the marriage by the labor or efforts of either party. § 61.075(5)(a)2. Further, as a practical matter, both parties testified that management of the CMA account had purposefully become more conservative during the marriage, and that the investment objective had changed from income and growth to conservative.
Asset appreciation is subject to equitable distribution where marital labor contributes to its value, even where the increased value is primarily created by passive inflation. See Pagano v. Pagano, 665 So.2d 370 (Fla. 4th DCA 1996). The key is whether the increase is passive, or whether marital labor or efforts by either party are involved. Pagano. If the increase is through passive means, the increase is not subject to equitable distribution. Pagano.
The relevant facts in this case are without dispute because the testimony of each party on this issue was identical. In addition to the power of attorney, Leon's name was on CMA account checks and he transferred money from the CMA account to a joint online (Datek) account, without Mary's knowledge, to engage in online stock trading. He also transferred money from the CMA account to open a joint Fidelity account, again without Mary's knowledge.
The CMA account holdings had changed almost completely from those which Mary inherited and only four securities remained of the original investment. Mary could not recall why any of the stocks and securities had been sold or exchanged, but Leon recalled and explained those transactions. Mary and Leon individually researched various stocks and participated jointly in managing the account, but Leon had more knowledge of the account history than Mary. He also made many of the investment decisions, assisted by a Merrill Lynch account representative. These decisions were often made without Mary's knowledge or approval and on several occasions she took exception to them.
These facts are susceptible of only one conclusion: both parties actively managed the CMA account, contributing marital labor and efforts. Accordingly, pursuant to section 61.075(5)(a)2., Pagano and Fredel v. Fredel, 531 So.2d 981 (Fla. 3d DCA 1988), rev. denied, 542 So.2d 988 (Fla. 1989), the increased value of the CMA account was a marital asset which should have been distributed under section 61.075.
Had the roles been reversed, this case would be easy to decide. Given the husband's lifestyle and minimal work ethic to enhance his wife's wealth, we can understand why the trial judge decided the cases as he did. Surely, gender neutrality cuts both ways and occasionally comes full circle. Accordingly, the equitable distribution scheme of the trial court is reversed. On remand, the trial court may consider the entire equitable distribution to ensure equity and justice between the parties.
REVERSED AND REMANDED.
HARRIS and PETERSON, JJ., concur.