841 So.2d 564 (2003)
Franz Edward MITCHELL, Appellant/Petitioner,
v.
Carol Lynn MITCHELL, Appellee/Respondent.
Nos. 2D01-2499, 2D02-1600.
District Court of Appeal of Florida, Second District.
March 14, 2003.
*566 Franz Edward Mitchell, pro se.
Clifton C. Curry of Law Offices of Curry & Associates, P.A., Brandon, for Appellee.
NORTHCUTT, Judge.
Franz Edward Mitchell appealed the final judgment dissolving his marriage to Carol Lynn Mitchell. While that appeal was pending, the circuit court rendered an order that arguably corrected a scrivener's error in the final judgment. However, Mr. Mitchell contends that the order substantively modified the final judgment while the circuit court's jurisdiction to do so was divested by virtue of the appeal. He challenged the order by petition for writ of certiorari. We have determined that the certiorari proceeding is more properly an appeal, and we treat it as such. We have consolidated the appeals sua sponte, and we reverse in part.
When the Mitchells married in June 1993, Mr. Mitchell owned a home in Tampa's Carrollwood neighborhood and 41 acres of unimproved land in North Carolina. These properties remained titled in his name alone throughout the parties' marriage. During the marriage, the Mitchells lived in the Carrollwood home and made mortgage payments on both properties with marital funds. Ms. Mitchell had two children from an earlier marriage, and two children were born to the parties. He is an instructor at Hillsborough Community College. She is a self-employed nurse legal consultant.
For purposes of our discussion, we have consolidated Mr. Mitchell's eleven issues into several categories.

CARROLLWOOD RESIDENCE
Oddly, the final judgment made two different dispositions of the Carrollwood home. On one hand, it awarded Ms. Mitchell exclusive use and possession of the home as long as she has primary residential custody of the parties' children. At the same time, the court purported to award the home to Ms. Mitchell outright.
When making the latter award, the circuit court determined that the $13,900 difference between the home's market value and the mortgage indebtedness at the time of the marriage was nonmarital. But it characterized the entire appreciated value of the home as marital property. The final judgment ordered Mr. Mitchell to quit-claim all of his interest to Ms. Mitchell, thus awarding her the entire equity of $36,751.
This was error. Because Mr. Mitchell acquired the home prior to the marriage and kept it titled in his name, it was his nonmarital property. *567 § 61.075(5)(b), Fla. Stat. (2000). Section 61.075(1) provides that "the court shall set apart to each spouse that spouses's nonmarital assets and liabilities...." Absent an agreement, a nonmarital asset may not be awarded to the non-owner spouse as equitable distribution. See Belmont v. Belmont, 761 So.2d 406, 408 (Fla. 2d DCA 2000).
On the other hand, the enhancement in value of a nonmarital asset resulting from either party's nonpassive efforts or the expenditure of marital funds is a marital asset. § 61.075(5)(a)2.; Belmont, 761 So.2d at 408. Here, the circuit court found that the home's value had been enhanced due to marital funds and efforts. But any such enhancement was surely negligible. The Mitchells performed what were, at bottom, primarily cosmetic or maintenance-related improvements, such as wallpapering and the like. By far, the most important factor in the increase in the value of the property was passive market appreciation, which both parties' appraisers calculated to be five to six per cent annually. This factor, alone, produced a market value of $185,000, which was the value assigned to the home by the circuit court.
Relying on Sizemore v. Sizemore, 767 So.2d 545, 547 (Fla. 5th DCA 2000), the circuit court concluded that a marital contribution to an asset's value subjects the entire appreciation of the asset to equitable distribution even if the increased value is primarily created by passive inflation. That is not the law in the Second District. Where, as here, the increase in market value is attributable to "inflation or fortuitous market forces," the expenditure of marital funds on the nonmarital asset does not transform the appreciated asset into marital property. See Straley v. Frank, 612 So.2d 610, 612 (Fla. 2d DCA 1992). But an increase in equity due to the use of marital funds to pay down a mortgage balance is a marital asset subject to equitable distribution. Cornette v. Cornette, 704 So.2d 667, 668 (Fla. 2d DCA 1997). Therefore, Ms. Mitchell's rightful interest in the Carrollwood home is limited to her one-half share of the amount by which the mortgage was reduced with marital payments.
On remand, the circuit court shall calculate the amount by which marital funds reduced the mortgage indebtedness in order to equitably distribute to Ms. Mitchell her share of the enhanced equity. It shall also enter any necessary orders to restore legal title to the home to Mr. Mitchell. We will address the question of exclusive use and possession of the home as an aspect of child support later in the opinion.

NORTH CAROLINA PROPERTY
Citing Stevens v. Stevens, 651 So.2d 1306 (Fla. 1st DCA 1995), and Sizemore, 767 So.2d 545, the circuit court characterized the entire appreciation in the value of the nonmarital North Carolina property as a marital asset subject to equitable distribution despite the fact that the appreciation was entirely attributable to passive inflation. As in the case of the Carrollwood home, this was error. It is undisputed that the property is unimproved. It has no sewer, septic, electric, or water connections. The record shows that the parties used marital funds to pay mortgage payments, taxes, and a road assessment fee. Under Straley, 612 So.2d 610, the increase in Mr. Mitchell's equity due to the use of marital funds to pay down the mortgage is a marital asset to be divided between the parties. Otherwise, the North Carolina property is Mr. Mitchell's nonmarital asset.

FAILURE TO CHARACTERIZE AND DISTRIBUTE LIABILITIES
The circuit court failed to characterize as marital or nonmarital three revolving *568 charge accounts. On remand, the court shall comply with section 61.075(1) by determining whether these liabilities are marital or nonmarital. If the former, it shall include these liabilities in its equitable distribution scheme. See Esposito v. Esposito, 651 So.2d 1248, 1248 (Fla. 2d DCA 1995).

VISITATION
The final judgment ordered the parties to share parental responsibility for their children, with Ms. Mitchell designated as the primary residential parent. The court approved the recommendation of the court-appointed psychologist that the parties undertake a "nine day/five day" visitation schedule. But when setting forth the particulars, the judgment provided that Mr. Mitchell was to have visitation "every Thursday overnight and every other weekend Friday through Tuesday morning." (Emphasis supplied.) Then, in seeming contradiction of that schedule, the judgment provided "[t]he summertime visitation schedule will reverse so that the Husband would then have the minor children 9 consecutive overnights and the mother would have the same visitation as the father until school began."
In an order entered while Mr. Mitchell's first appeal was pending, the circuit court observed that the phrase "every Thursday" was a scrivener's error, and should have read "every other Thursday" in order to accomplish the "nine day/five day" visitation schedule. Indeed, that is our view of the matter. However, as Mr. Mitchell points out in his second appeal, the circuit court lacked jurisdiction to alter the final judgment while it was being appealed. Because the scrivener's error is clearly apparent from the record, we remand for the circuit court to correct the error by amended final judgment. See Nigrelli v. Nigrelli, 807 So.2d 756 (Fla. 3d DCA 2002). This moots Mr. Mitchell's second appeal.

CHILD SUPPORT
Mr. Mitchell raises several issues regarding his child support obligation. First, he complains that when setting child support the circuit court failed to consider the fact that the visitation arrangement places the children with him a substantial amount of time. When the circuit court entered its judgment in May 2001, section 61.30(11)(b), Florida Statutes (2000), provided: "Whenever a particular shared parenting arrangement provides that each child spend a substantial amount of time with each parent, the court shall adjust any award of child support," based on a list of specified considerations. The statute did not indicate what qualified as a "substantial amount of time."
The parties disagree about the percentage of time the children spend with Mr. Mitchell under the "nine day/five day" shared parenting arrangement. By our calculations, his share of the annual overnights is just over 40 percent.[1] We believe this is a "substantial amount of time" as that phrase is used in the 2000 statute. This view is buttressed by the fact that in July 2001 the statute was amended to clarify that the court has discretion to adjust the child support award when the children spend "a significant amount of time, but less than 40 percent of the overnights, with the noncustodial parent," and that the court "shall" adjust the child support award when the children spend "a substantial *569 amount of time with each parent." § 61.30(11)(a)(10), (11)(b). "Substantial amount of time" is defined to mean that "the noncustodial parent exercises visitation at least 40 percent of the overnights of the year." § 61.30(11)(b)(10).
We note that, although the 2000 statute provides that the court "shall" adjust the guidelines child support amount under these circumstances, we believe the statutory criteria under which the adjustment is to be made give the court discretion to leave the guidelines award untouched if the decision to do so can be justified according to those criteria. In other words, the statute seems to mandate that whenever a parenting scheme places the children with the noncustodial parent a substantial amount of time, the court must examine the child support award in light of the factors listed in subsection 11(b), and adjust it or not, accordingly.
The final judgment does not suggest that the circuit court took this requirement into account when setting Mr. Mitchell's child support obligation. On remand the court shall re-examine the child support award with this provision in mind. We emphasize that we do not vouch for the precision of our calculations, nor do we direct the court in its application of the criteria set forth in section 61.30(11)(b). The court is free to do its own calculations and to proceed under that section accordingly.
Mr. Mitchell also contends the circuit court erred when determining the parties' incomes for purposes of calculating child support. The court found that Mr. Mitchell had a gross annual income of $57,846.97, based on his 1999 earnings. This figure consisted of his basic salary of $42,290, plus overtime pay. At the final hearing he estimated that his 2000 income would decrease to $52,000 due to declining enrollment and HCC policy changes which reduced his ability to teach and earn overtime.
Mr. Mitchell complains that the circuit court failed to make specific findings to support the income attributed to him. The court does not need to make additional findings to justify its use of the 1999 gross income figure. However, we are concerned about the effect that HCC's policy changes and enrollment may have had on Mr. Mitchell's overtime opportunities. When the circuit court considers this matter on remand, it should have the benefit of the husband's income since 1999, which will enable the court to make a more informed calculation. See Lauro v. Lauro, 757 So.2d 523, 526 (Fla. 4th DCA 2000). The court properly included Mr. Mitchell's overtime pay in its calculation of his gross income, section 61.30(2)(a)2., but the court must evaluate whether his overtime is regular and continuous. Regular overtime is included unless the court specifically finds that the opportunity to earn overtime will not be available as an income source in the future. Shrove v. Shrove, 724 So.2d 679, 682 (Fla. 4th DCA 1999).
Mr. Mitchell maintains that the court understated Ms. Mitchell's income and erred in failing to impute income to her. The court found that Ms. Mitchell was physically and emotionally able to work full time. Since the youngest child was born, however, she had been working only part-time. While the divorce was pending, she returned to school to become a legal nurse consultant, a position that she is able to perform from her home. At the time of the divorce she was billing only about ten hours a week at $50 per hour. She also earned about $300 monthly in a nursing position she kept to maintain her skills. Her 1999 gross income was $21,607, but she reported monthly income in 2000 that would produce an annual income of $27,312, and testified that she was *570 attempting to obtain additional contract work from other law firms. At the time of the dissolution the parties' youngest child was not yet six years of age, but all of the children have now reached school age and presumably are enrolled in school.
Notwithstanding that Ms. Mitchell's income was rising at the time of the final hearing in 2000, the circuit court used her outdated 1999 gross income figure. This was error. See Hanley v. Hanley, 734 So.2d 529 (Fla. 4th DCA 1999).
Further, section 61.30(2)(b) requires the court to impute income to a voluntarily underemployed parent, although it may refuse to impute income to a primary residential parent if it finds that it is necessary for the parent to stay home with the children. Now that the children are school-age, Ms. Mitchell's perceived ability to bill merely ten hours weekly is no longer justified. If she were to bill just twenty hours a week, her gross income would exceed $50,000. "[P]ublic policy favors imposing on parents an obligation to contribute to the child's support." Williams v. Beagle ex rel. Beagle, 777 So.2d 1213, 1214 (Fla. 5th DCA 2001). Accordingly, Ms. Mitchell must exercise her best efforts to work and bill additional hours while maintaining the flexibility that she needs as the primary residential parent. On remand, the court shall carefully examine Ms. Mitchell's situation to determine whether she continues to be voluntarily underemployed. If so, and if her underemployment is not justified under section 61.30(2)(b), the court shall comply with the statute by imputing income to her.
The circuit court also erred in ordering Mr. Mitchell to pay for all of the children's medical and dental insurance coverage without any sharing provision except as to deductibles and noncovered expenses. On remand the court must apportion the cost of such coverage by adding it to the basic obligation determined pursuant to section 61.30(6). § 61.13(1)(b); .30(8). See Hoffman v. Hoffman, 793 So.2d 128 (Fla. 4th DCA 2001).
In its final judgment, the court directed Mr. Mitchell to maintain a $100,000 policy of life insurance as security for his child support obligation. He cites Phillips v. Phillips, 796 So.2d 1289, 1290 (Fla. 5th DCA 2001), for the proposition that the cost of this insurance should have been apportioned between the parties in the same way that child support is apportioned generally. We agree, with two provisos: The cost of such insurance should be included in the parties' basic child support obligation only to the extent that Mr. Mitchell must pay for it. Further, although Mr. Mitchell is free to purchase a life insurance policy that accrues cash value, the circuit court may apportion only an amount sufficient to purchase a term policy.

EXCLUSIVE USE AND POSSESSION OF MARITAL HOME
Our determination that the Carrollwood home must remain Mr. Mitchell's separate property also compels us to reverse the award to Ms. Mitchell of the home's exclusive use and possession. A court may award exclusive possession of a jointly owned marital home to the custodial parent as an incident of the other party's child support obligation. McDonald v. McDonald, 368 So.2d 1283, 1284 (Fla. 1979). This authority does not extend to nonmarital real property absent a finding pursuant to section 61.30(13) that the noncustodial parent's recurring income is insufficient to meet his child support obligation. Dyer v. Dyer, 658 So.2d 148, 149 (Fla. 4th DCA 1995). There was no such finding in this case. Therefore, we reverse this award.
*571 When revisiting the child support on remand, the circuit court may again award Ms. Mitchell exclusive use and possession of the Carrollwood home during the children's minority only if it makes findings, supported by competent, substantial evidence, demonstrating that such is necessary pursuant to section 61.30(13). Moreover, if the court makes such an award, it must determine the fair market rental value of the home and include that figure in Ms. Mitchell's gross income for purposes of calculating child support under the statutory guidelines. See Bryan v. Bryan, 765 So.2d 829 (Fla. 1st DCA 2000); Cooper v. Cooper, 760 So.2d 1048, 1049 (Fla. 2d DCA 2000); Thomas v. Thomas, 712 So.2d 822 (Fla. 2d DCA 1998).

CONCLUSION
In summary:
1. We reverse the inclusion of the Carrollwood and North Carolina properties in the equitable distribution scheme, and remand with directions to treat them as Mr. Mitchell's nonmarital assets. On remand the court shall restore Mr. Mitchell's title to the Carrollwood home. It shall revisit the equitable distribution in order to award Ms. Mitchell her share of the amount by which marital funds reduced the mortgages on these properties and to otherwise fashion an equitable distribution that does not include the Carrollwood and North Carolina properties.
2. On remand the circuit court shall determine whether the three revolving accounts mentioned above are marital or nonmarital liabilities. If the former, the court shall value the liabilities and include them in its equitable distribution scheme.
3. The court shall amend the final judgment to correct the scrivener's error discussed above in order to achieve the "nine day/five day" visitation schedule otherwise contemplated in the judgment.
4. The child support award is reversed and remanded for reconsideration. On remand the court shall recalculate the child support amount based on current evidence of the parties' incomes. Specifically, without limitation, the court shall consider Mr. Mitchell's overtime experience since the final hearing, and it shall determine whether Ms. Mitchell is voluntarily underemployed for purposes of imputing income to her pursuant to section 61.30(2)(b). When refashioning the child support award, the court shall also comply with sections 61.13(1)(b) and 61.30(8) by including the children's health insurance and health care costs in the basic obligation established pursuant to section 61.30(6) and apportion those costs accordingly. Further, the court shall apportion the cost of life insurance Mr. Mitchell was ordered to obtain, as discussed above.
5. When revisiting the child support award, the court may grant Ms. Mitchell exclusive use and possession of the Carrollwood home if the court makes findings based on competent, substantial evidence that Mr. Mitchell's recurring income is not sufficient to permit him to satisfy his child support obligation. In that event, the fair market rental value of the home must be added to Ms. Mitchell's gross income for purposes of calculating child support.
We reject Mr. Mitchell's argument that the circuit court abused its discretion in its temporary financial orders and in awarding Ms. Mitchell exclusive use and possession of the marital home prior to the final judgment. We affirm without comment as to all other issues not discussed in this opinion.
Case No. 2D01-2499 is reversed in part, affirmed in part, and remanded for further proceedings.
Case No. 2D02-1600 is dismissed as moot.
*572 ALTENBERND, C.J., and THREADGILL, EDWARD F., Senior Judge, concur.
NOTES
[1] Assuming a nine or ten week summer recess from school, during which the nine day/five day schedule is reversed, and considering that the final judgment equally divides or alternates holidays, vacations, and birthdays, Mr. Mitchell has the children roughly 40.5 or 41 percent of the overnights.