965 So.2d 341 (2007)
Teri HOLLISTER, Appellant/Cross-Appellee,
v.
Mark A. HOLLISTER, Appellee/Cross-Appellant.
Nos. 2D04-2803, 2D05-4834.
District Court of Appeal of Florida, Second District.
September 26, 2007.
*342 Theodore J. Rechel of Rechel & Harriman, P.A., Tampa, for Appellant/Cross-Appellee.
James R. Schaffer of James R. Schaffer, P.A., Tampa, for Appellee/Cross-Appellant.
*343 SILBERMAN, Judge.
In these consolidated appeals, Teri Hollister (the Wife) appeals the final judgment of dissolution of marriage, arguing that the trial court erred in the equitable distribution and award of alimony in case number 2D04-2803. In case number 2D05-4834, the Wife appeals the order denying her motion for enlargement of time and amended motion for attorney's fees.[1] On cross-appeal in case number 2D05-4834, Mark A. Hollister (the Husband) contends that the trial court erred in granting the Wife's motion for rehearing on attorney's fees. We reverse the final judgment of dissolution of marriage with respect to the equitable distribution and alimony provisions. We strike the order granting the Wife's motion for rehearing on attorney's fees because the trial court lacked jurisdiction at the time it entered that order. We reverse the original order denying fees and remand for further proceedings on the Wife's request for fees.
The parties had been married for twenty-two years when the Husband filed a petition for dissolution of marriage on June 6, 2003. The parties have two children who have attained the age of majority since entry of the final judgment. The parties raise no issues with respect to the provisions of the final judgment that relate to the children, and we affirm those portions of the final judgment. However, based on numerous errors in the final judgment, as detailed below, we reverse the equitable distribution and alimony components of the final judgment and remand for further proceedings.
At a hearing on October 23, 2003, Judge Timmerman ordered the Husband to pay $5750 per month in temporary alimony. The case went to trial in February 2004 before Judge Gomez. The parties stipulated to the value and distribution of many of their assets and liabilities. The Husband agreed that the Wife was entitled to permanent periodic alimony but disputed the amount.
At the time of trial, the Husband was fifty-two years old, had a college degree, and was employed as a regional vice president for Nortrax, Inc., earning an income of $221,000 per year. The Husband receives a car allowance of $1000 per month, and for 2003 he received a net bonus of approximately $25,000. The Husband has been employed with Nortrax since 1999, and the only other bonus he received was in 2001. He characterized the 2001 bonus as a "stay" bonus to encourage him to remain with the company.
At the time of trial, the Wife was forty-seven years old, had a high school diploma, and had worked outside the home only intermittently during the marriage. Based on the parties' agreement, the Wife had managed the household and cared for the parties' children. Early in the marriage she had worked as an administrative assistant. Her last part-time employment was in 1995 as a pharmaceutical representative. Her highest annual salary was $26,000, but she did not earn that amount because she did not remain in that position the full year. After moving to Tampa in 1987, the most she had earned in any one year was $13,536.

I. EQUITABLE DISTRIBUTION

Failure to equitably distribute the parties' assets and liabilities
Decisions regarding equitable distribution are subject to an abuse of *344 discretion standard of review. Augoshe v. Lehman, 962 So.2d 398 (Fla. 2d DCA 2007); Pomeranz v. Pomeranz, 901 So.2d 895, 896 (Fla. 4th DCA 2005). Section 61.075, Florida Statutes (2003), requires the trial court to equitably distribute the parties' marital assets and liabilities. Here, the trial court listed and valued assets and liabilities in the final judgment but failed to distribute them. The parties pointed this out to the trial court in their motions for rehearing, but, inexplicably, the trial court denied the motions. The judgment recognizes that the parties agreed to the values of the majority of the assets. Neither party sought an unequal distribution, as evidenced by their proposed equitable distribution worksheets. However, their worksheets distribute the assets and liabilities somewhat differently.
The trial court abused its discretion in failing to equitably distribute the parties' assets. Thus, we remand and direct the trial court to effect an equal equitable distribution, subject to any specific issues discussed below.

Stock Appreciation Rights
The Wife takes issue with the trial court's finding that the Husband's stock appreciation rights (SARs) with his employer have no marital value. Further, the Wife contends that the trial court should have imposed a constructive trust in the Wife's favor on one-half of the Husband's vested but unvalued SARs.
The Husband began working for Nortrax in November 1999. In 2000 or 2001, Nortrax granted to the Husband 46,667 SARs with a base equity value of $10 per share. The SARs plan documents reflect that the Husband agreed to the replacement of the "old SARs" with 50,000 "new SARs" having a base equity value of $6.81 per share. A letter dated March 1, 2003, from the Nortrax Board of Directors reflects that the new SARs were "100% vested as of this writing." The SARs plan documents indicate that the original grant date of the new SARs was January 18, 2002, and at that time 70% of the SARs were vested. The remaining 30% vested on December 1, 2002. Thus, the record reflects that the Husband's SARs were fully vested before he filed the petition for dissolution on June 6, 2003.
The Husband testified that he is not entitled to the base equity value of the SARs but only the amount of any appreciation above the base equity value. At the time of trial, the Nortrax Board of Directors had not determined the value of the SARs and had no obligation to do so until January 18, 2006. After that date, the Husband could elect to redeem up to 20% of his SARs, and at that time the Board would be obligated to determine the equity value of the Nortrax stock. The Husband contended that any appreciation would be due to his future performance and thus would be nonmarital. The trial court found that the SARs "have no marital value" because any appreciation would be based on the company's future performance.
A court presumes that an asset is marital when a spouse acquires the asset after the date of the marriage and the asset has not specifically been established as nonmarital. § 61.075(7), Fla. Stat. (2003). The cut-off date for determining marital assets, unless the parties enter into a valid separation agreement, is the date the petition was filed. § 61.075(6). Section 61.075(5)(a)(4) defines marital assets to include "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs[.]" The SARs were fully vested before the petition for dissolution was filed and should have been designated as a marital asset. See *345 Parry v. Parry, 933 So.2d 9, 13 (Fla. 2d DCA 2006) (stating that the trial court properly treated vested stock options as marital assets and included them in the equitable distribution scheme).
Although the Husband argues that the appreciation is based on future performance, to the extent that any appreciation is for performance before the petition for dissolution was filed on June 6, 2003, then that amount should be valued as a marital asset for purposes of equitable distribution. See Parry, 933 So.2d at 13 (stating that "an award given as an incentive for future service would be marital only to the extent that the service is thereafter performed before the end of the marriage"). The trial court essentially found that the SARs were not a marital asset in finding that they had no marital value. Although we recognize the problem in being unable to value the SARs, that does not preclude the court from identifying them as marital assets and accounting for them as part of the equitable distribution. Thus, we reverse and remand for the trial court to identify the SARs as a marital asset. As the Wife suggests, we direct the trial court to impose a constructive trust on one-half of the SARs, as in Jensen v. Jensen, 824 So.2d 315, 321 (Fla. 1st DCA 2002) (recognizing that a constructive trust is a deferred distribution method and that "[t]he deferred distribution approach for a stock option that cannot be valued as of yet is the only prudent and plausible approach to adopt"). We note that Jensen dealt with unvested stock options, but like the unvested stock options in Jensen, the Nortrax SARs were not capable of being valued at the time of trial. Thus, on remand the trial court shall impose a constructive trust for the Wife's benefit on one-half of the SARs until their marital value can be determined.

Overdraft Protection Account
The Wife contends that the trial court abused its discretion in failing to value a liability, an overdraft protection account, as of the date it was closed on July 23, 2003, at a balance of $12,164.16. Rather, the trial court valued the account as of June 3, 2003, the date of filing the petition, at a balance of $6038.86. This issue is interrelated with the issue of retroactive alimony. The court stated that the $6038.86 liability "should be included in equitable distribution" and that "[t]he amount shall be considered retroactive alimony." The court, however, did not order the Husband to pay the liability.
The parties' joint checking account was connected to their Suntrust MasterCard (the overdraft protection account). The overdraft protection account is in the Wife's name alone. After the parties separated in April 2003, the Husband continued to have his paycheck deposited into the joint checking account, and the Wife paid all the household expenses from that account and also paid the Husband's bills for his separate residence from that account. The Husband stopped depositing his paycheck in the joint account on June 6, 2003, but the Wife continued to pay her house-hold expenses and the Husband's rent and utilities from the account. The Wife also made an $1800 payment from the joint account to the Husband's attorney on an unrelated matter. She testified that the Husband also accessed the joint account by ATM for cash withdrawals. The Wife's accountant prepared an analysis of the joint checking account and the flow-through to the overdraft protection account that was admitted into evidence. The accountant testified that the Wife was writing checks for normal operating expenses and that the only extraordinary amount was $1000 for a septic problem.
*346 The Husband closed the joint checking account on July 23, 2003. The resulting balance in the overdraft account was $12,164.16.[2] The accountant's analysis and testimony reflects that during the time period from June 1, 2003, through July 23, 2003, the Husband deposited $15,742.78 into the joint checking account. The analysis and testimony also reflects that "$22,300 was advanced to the marital account" during that time period.
The trial court found as follows:
The Wife did not provide a sufficient explanation for additional spending in excess of $21,000.00 during the same period. The Court will note that the money the Husband paid was approximately $4,000.00 in excess of the temporary support subsequently awarded. Accordingly, the Court shall value this liability at $6,038.86. This amount should be included in equitable distribution. The amount shall be considered retroactive alimony.
The Wife, relying upon Akers v. Akers, 582 So.2d 1212 (Fla. 1st DCA 1991), contends that because she used the overdraft account to pay her expenses and the Husband's separate expenses (such as rent, utilities, and an attorney), the liability should be valued at the later date and the Husband should be required to pay it. The Husband contends that he paid the Wife $15,742.78 for support during this time period. The court found that the Wife did not provide a sufficient explanation for additional spending in excess of $21,000 during this time period. It may be that the trial court felt that the Wife was living beyond the parties' means; however, this does not seem to account for the fact that the Wife paid the Husband's expenses from the account and that the Husband accessed the ATM associated with that account.
The trial court found that the liability, which is titled solely in the Wife's name and which the court valued at $6038.86, would be retroactive alimony but did not order the Husband to pay the liability. On appeal, the Wife suggests that perhaps the trial court meant to award the difference between the $12,164.16 debt as of July 2003 and the $6038.86 debt as of June 2003 as retroactive alimony and order the Husband to pay the difference. All we can discern is that the trial court failed to equitably distribute this liability and it is unclear how the court meant it to serve as retroactive alimony. Thus, we reverse the trial court's determination on this issue and direct the trial court to reconsider it on remand and make sufficient findings that would allow meaningful review.

The Husband's 2003 Bonus
The Wife contends that the trial court abused its discretion in failing to equitably distribute the Husband's bonus received for work done in 2003 or, in the alternative, to consider it as income in determining the Husband's ability to pay alimony. The trial court did not abuse its discretion in not including the Husband's 2003 bonus as income because the Husband's testimony supports the conclusion that the bonus was not regular and continuing. See Vergara v. Vergara, 831 So.2d 251, 252 (Fla. 3d DCA 2002). However, on remand the trial court should include a portion of the bonus in the equitable distribution.
The Husband received an approximately $25,000 net bonus shortly before the final hearing in February 2004 for work done in 2003. Almost half of the bonus was *347 earned by the Husband's marital effort before he filed the petition for dissolution of marriage in June 2003. However, the husband testified that he spent a substantial portion of the bonus for living expenses, such as furnishing his apartment and paying his attorney. The Husband testified that approximately $2000 of the bonus remained in his checking account at the time of the final hearing. In Plichta v. Plichta, 899 So.2d 1283, 1286 (Fla. 2d DCA 2005), the trial court had included in the equitable distribution the value of two IRA accounts that the husband had liquidated during the course of the dissolution proceedings in order to "pay for his support, living expenses, and some litigation costs." This court determined that the trial court erred by including "depleted marital assets in the equitable distribution scheme because the Husband used this sum during the pendency of the dissolution proceedings, and no misconduct was asserted." Id. Thus, we direct the trial court on remand to include 5/12 of the net bonus remaining at the time of the final hearing as a marital asset and to equitably distribute it.

II. ALIMONY

The Wife's Imputed Income
The trial court imputed income to the Wife of $2167 per month, but the record contains no competent, substantial evidence to support this amount. The Wife, a high school graduate, held her last part-time employment in 1995. For the first five years of the marriage she worked as an administrative assistant, and her highest annual salary would have been $26,000 in the mid-1980s, but she only worked for four months in that position before moving. No evidence was presented as to available jobs or prevailing earnings in the community. The Wife, however, admitted that she could obtain a job and earn $24,000 annually in an entry level position. In fact, her accountant's alimony calculations assumed that beginning in year two, the Wife would earn $2000 per month. Based on the Wife's admission that she could earn this amount, the trial court could have imputed $2000 per month. Thus, we reverse and direct the trial court that it may impute no more than $2000 per month.
The Wife also argues that if income is imputed, she is entitled to rehabilitative or bridge-the-gap alimony until she becomes employed. See Bacon v. Bacon, 819 So.2d 950, 953 (Fla. 4th DCA 2002) (recognizing that the trial court assumed that the wife could be employed immediately and stating that "the court should have awarded sufficient alimony to cover the wife's total present need until such time as the wife is able to find reasonable employment, at which time modification might be in order"). We agree that on remand the trial court should award alimony to meet the wife's total present need and consider rehabilitative or bridge-the-gap alimony depending upon the circumstances that exist upon remand. We note that due to the passage of time since trial, the Wife may have already found employment. If she has, the trial court should, of course, take that into consideration when making the alimony award.

Tax Consequences to the Wife
With respect to permanent, periodic alimony, the trial court found in the final judgment
that the Wife's monthly needs are approximately $7,800.00. The Court notes that utilizing the Husband's alimony scenario of the Wife earning $2,167.00 per month and Husband paying $5,633.00 per month in alimony provides the Wife with a monthly income, after taxes *348 which would fully meet the Wife's standard of living as stated herein.
If $7800 is the figure the trial court intended for the Wife's net need per month, then the Wife is correct that the trial court failed to take into account the tax consequences to provide enough to meet her net needs.
The Husband argues that the $7800 figure is a mathematical error because the trial court tracked the Husband's argument presented in his summary of issues that outlined several areas where the Wife's accountant overstated her needs. In the judgment the court noted areas in which the accountant stated expenses that the Wife does not have and expenses that were in excess of what the Wife testified to and listed on her financial affidavit. The Husband contends that the trial court overstated the Wife's needs by $2000 and should have stated that her needs were $5800 per month rather than $7800 per month. We cannot make that assumption.
The Wife's accountant presented detailed alimony calculations, including tax consequences. He testified that the Wife's net standard of living was $10,361.35 per month. Thus, if the $7800 figure used by the trial court is for the Wife's net need, it appears that the trial court already deducted over $2000 from what the accountant testified to as the Wife's standard of living. In any event, it is unclear from the final judgment what the trial court intended. Therefore, we reverse and remand the alimony determination for the trial court to clarify its finding on the Wife's needs, including consideration of tax consequences. See Sharon v. Sharon, 862 So.2d 789, 791 (Fla. 2d DCA 2003) ("When evidence of the tax impact of an alimony award is presented, it is error for the trial court to fail to consider these consequences.").

Retroactive Alimony
The Wife contends that the trial court abused its discretion in failing to award her retroactive alimony, other than the $6000 overdraft protection account debt that the trial court declared as retroactive alimony. The Husband counters that the Wife is not entitled to retroactive alimony. The divergent viewpoints appear to be at least partly based on the fact that the parties dispute the amount necessary to meet the Wife's needs. The Wife makes her argument based on a net need of $7800 per month, while the Husband makes his argument based on a net need of $5800 per month.
Because we are reversing and remanding for the trial court to clarify the Wife's net need for the purposes of determining permanent, periodic alimony, we reverse the trial court's determination on retroactive alimony. On remand, the trial court shall reconsider retroactive alimony once it clarifies the Wife's net need and shall make adequate findings that allow meaningful appellate review.

The Husband's Income
The Wife contends that the trial court abused its discretion in determining the Husband's income by not including the Husband's 2003 bonus, a portion of the Husband's car allowance, and $8000 the Husband earned from a "side deal selling equipment." As stated above with respect to the bonus, the evidence did not reflect that the bonus was regular or continuing in nature. See Vergara v. Vergara, 831 So.2d 251, 252 (Fla. 3d DCA 2002). Similarly, although the Husband had on occasion earned money from equipment sales, the evidence supports the conclusion that these sales are not regular and continuing. See id. Thus, the trial court properly did not include those items in the Husband's income.
*349 With respect to the Husband's $1000 per month car allowance, the Husband admits that he uses the vehicle for personal use 20% of the time. The Wife's accountant testified that if the vehicle is used 20% for personal use, then $200 should be reflected as income. The Husband contends that this error is harmless because his income was more than enough to meet his Wife's needs. Because we are reversing and remanding on other issues, we direct the trial court on remand to include 20% of the car allowance as income in determining the Husband's ability to pay.

III. ATTORNEY'S FEES
The trial court did not have jurisdiction to enter the order on rehearing that the Husband is contesting on cross-appeal in case number 2D05-4834. That order, rendered on October 25, 2005, grants the Wife's motion for rehearing and orders the parties to attend mediation on the issue of the Wife's request for attorney's fees. On February 24, 2005, the Wife had filed a third motion to supplement the record in the appeal of the final judgment in case number 2D04-2803. This court, in an order entered on September 26, 2005, treated the motion to supplement as a timely notice of appeal of the order rendered April 22, 2005, denying the Wife's motion for enlargement of time and amended motion for attorney's fees, which became appellate case number 2D05-4834. Thus, when the trial court heard the motion for rehearing on October 17, 2005, and rendered the order granting rehearing on October 25, 2005, the appeal of the April 22, 2005 order was pending. Because the appeal of the April 2005 attorney's fees order was pending, the trial court lacked jurisdiction to rule on the motion for rehearing; therefore, we strike the October 2005 order. See Farr v. Farr, 840 So.2d 1166, 1167 (Fla. 2d DCA 2003) (determining that the wife's motion for rehearing was abandoned by the wife filing a notice of appeal and that the trial court lacked jurisdiction to rule on the motion for rehearing after the wife filed her notice of appeal).[3]
In its April 22, 2005, order, the trial court denied the Wife's amended motion for fees. The court concluded that the motion was not timely, relying on Florida Rule of Civil Procedure 1.525. However, effective March 3, 2005, the Florida Supreme Court promulgated Florida Rule of Family Law Procedure 12.525, which states that rule 1.525 does not apply in family law cases. See Montello v. Montello, 961 So.2d 257 (Fla.2007). In Montello, the supreme court held that rule 12.525 applies to all cases that were pending when the rule was enacted. Because this case was pending when rule 12.525 was enacted, we reverse the original order denying fees and remand the fee issue to the trial court for further consideration. We note that in the order on rehearing, the trial court sought to vacate the original order, consistent with rule 12.525. Because we are compelled to vacate the order on rehearing as discussed above, on remand the trial court may again order the parties to attempt to mediate the fee issue and may take such other action as may be necessary to resolve the issue.

*350 IV. CONCLUSION
For the foregoing reasons, we affirm the final judgment of dissolution of marriage in part and reverse in part. On remand, the trial court must reconsider the alimony award and the equitable distribution of assets and liabilities. We reverse the original fee order of April 2005 and remand for further proceedings. We strike the October 2005 rehearing order on fees.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT, C.J., and LaROSE, J., Concur.
NOTES
[1] The Wife did not file a notice of appeal from this order denying fees; rather, this court treated the Wife's third motion to supplement the record in case number 2D04-2803 as a notice of appeal from the order denying fees.
[2] The net increase in the overdraft account was $11,663 between the beginning of June 2003 and the closing of the account. At the beginning of June the account had a balance of $500.59, and when it was closed at the end of July, it had a balance of $12,164.16.
[3] We acknowledge that normally when a party files a notice of appeal any pending motion for rehearing that the appealing party had previously filed is deemed abandoned. See Fla. R. App. P. 9.020(h)(3). Under the peculiar facts of this case, however, the Wife never filed a notice of appeal regarding the order denying fees. Rather, this court considered a motion in a separate appeal as her notice of appeal. Thus, we do not consider the Wife to have abandoned her motion for rehearing.