WALLACE, Judge.
 

 Katherine Kaaa (the Wife) raises a single issue in her appeal from the final judgment that dissolved her marriage to Joseph Kaaa (the Husband). She challenges the trial court’s denial of her claim to a portion of the passive appreciation in the Husband’s nonmarital real property, even though the mortgage debt encumbering the property was paid with marital funds throughout the course of the parties’ twenty-seven-year marriage. Because the trial court correctly applied this court’s decision in
 
 Mitchell v. Mitchell,
 
 841 So.2d 564 (Fla. 2d DCA 2003), in disposing of the Wife’s claim, we affirm the final judgment in all respects. However, we certify that our decision is in direct conflict with the First District’s decision in
 
 Stevens v. Stevens,
 
 651 So.2d 1306 (Fla. 1st DCA 1995).
 

 I. THE FACTUAL BACKGROUND
 

 The parties were married in 1980. They had four children. At the time of the final hearing, three of the children had reached the age of majority. The parties continued to occupy the same residence through the date of the final hearing. The trial court entered the final judgment of dissolution of marriage on December 18, 2007.
 

 In October 1979, approximately six months before the parties were married, the Husband purchased a residence in Riv-erview, which was located on a one-and-one-quarter-acre lot. This residence, referred to as “the Riverview property,” became the parties’ marital home. The Husband took title to the property in his name alone. Although the parties refinanced the Riverview property several times, the Husband never transferred any interest in the property to the Wife.
 

 The Husband purchased the Riverview property for approximately $36,500. The down payment required at the closing was $2000.
 
 [1]
 
 The Husband financed the balance of the purchase price with a mortgage on the property. During the course of the marriage, the parties paid all of the mortgage’payments, insurance premiums, taxes, and maintenance expenses of the Riverview property from marital funds. In addition, the parties used marital funds to improve the residence by closing in a carport. At the final hearing, the parties stipulated that the Riverview property had a current fair market value of $225,000 and was subject to a mortgage with a balance of $12,871.46.
 

 II. THE CIRCUIT COURT’S RULING
 

 The trial court made the following findings of fact concerning the Riverview property:
 

 H. [The Riverview property] was purchased by the Husband prior to the
 
 *758
 
 marriage, continues to be titled in the Husband’s name alone, and is, therefore, the Husband’s non-marital property pursuant to Section 61.075(5)(b)[,] Florida Statutes.
 

 I. During the marriage, the balance of the mortgage on the Husband’s home was reduced by $22,279, and an addition was made to the home of 360 square feet, increasing the current value of the home, at $40 per square feet [sic] as credibly testified to by the Wife’s expert ... by $14,400.00.
 

 J. The enhancement of the home as described in Section I hereof, totaling $36,679, was made through the use of marital funds or efforts or both, and is therefore a marital asset subject to equitable distribution pursuant to Section 61.075(5)(a)[,] Florida Statutes.
 

 Based on these findings, the trial court ruled that the Husband was entitled to the exclusive use and ownership of the River-view property. In addition, the trial court ordered the Husband to pay the Wife an equalizing payment of $18,339.50. The equalizing payment represented the Wife’s one-half interest in the paydown on the mortgage and the increase in the value of the property attributable to closing in the carport.
 

 III. DISCUSSION
 

 The trial court correctly decided the issue of the extent of the Wife’s interest in the enhancement of the value of the Riverview property in accordance with this court’s decision in
 
 Mitchell.
 
 Marital funds enhanced the value of the property by paying down the principal balance of the mortgage and by increasing the size of the residence. These enhancements are marital assets subject to equitable distribution.
 
 See
 
 § 61.075(5)(a)(2), Fla. Stat. (2006);
 
 Mitchell,
 
 841 So.2d at 567. The trial court properly made an equitable distribution to the Wife of a one-half share in the value of these marital assets. However, under
 
 Mitchell,
 
 the increase in the value of the Riverview property resulting from passive appreciation is the Husband’s nonmarital asset.
 
 See
 
 841 So.2d at 567 (“Where, as here, the increase in market value is attributable to ‘inflation or fortuitous market forces,’ the expenditure of marital funds on the nonmarital asset does not transform the appreciated asset into marital property.”) (citing
 
 Straley v. Frank,
 
 612 So.2d 610, 612 (Fla. 2d DCA 1992)). Thus the trial court properly declined to award the Wife any portion of the increase in the value of the property resulting from passive appreciation.
 

 In the briefs and at oral argument, the Wife has directed our attention to the First District’s decision in
 
 Stevens.
 
 We agree with the Wife that the First District takes a different approach than
 
 Mitchell
 
 relative to the treatment of the passive appreciation of nonmarital real property where the value of the property has been enhanced by marital funds or labor. In
 
 Stevens,
 
 the First District explained its approach as follows:
 

 Equitable distribution of marital assets should take into account the appreciated value of a non-marital asset caused by the expenditure of marital funds or labor, including the parties’ management, oversight, or contribution to principal,
 
 Young v. Young,
 
 606 So.2d 1267, 1270 (Fla. 1st DCA 1992);
 
 Massis v. Massis,
 
 551 So.2d 587, 589 (Fla. 1st DCA 1989), as well as an appropriate portion of any appreciation of a non-marital asset caused by the effects of inflation and market conditions, where “some portion of the current value ... must reasonably be classified as a marital asset.”
 
 Sanders v. Sanders,
 
 547 So.2d 1014, 1016 (Fla, 1st DCA 1989).
 

 
 *759
 
 An asset brought by one party to a marriage, which appreciates during the course of the marriage, solely on account of inflation or market conditions, becomes in part a marital asset, if it is encumbered by indebtedness which marital funds service. Each spouse’s income is deemed marital funds. Here the trial court erred in excluding from the equitable distribution plan the entire amount by which the [husband’s non-marital real] property appreciated in value during the marriage, since marital funds were used to make the mortgage payments and pay the taxes. The appreciation, if any, should be allocated between the parties by a “reasonable proration of the appreciated value.”
 
 Sanders,
 
 547 So.2d at 1016.
 

 If a separate asset is encumbered and no marital funds are used to finance its acquisition, improvement, or maintenance, no portion of its value should ordinarily be included in the marital estate, absent improvements effected by marital labor. If an asset is financed entirely by borrowed money which marital funds repay, the entire asset should be included in the marital estate. In general, in the absence of improvements, the portion of the appreciated value of a separate asset which should be treated as a marital asset will be the same as the fraction calculated by dividing the indebtedness with which the asset was encumbered at the time of the marriage by the value of the asset at the time of the marriage. If, for example, one party brings to the marriage an asset in which he or she has an equity of fifty percent, the other half of which is financed by marital funds, half the appreciated value at the time of the petition for dissolution was filed, § 61.075(5)(a)[ (]2[) ], Fla. Stat. (1993), should be included as a marital asset. The value of this marital asset should be reduced, however, by the unpaid indebtedness marital funds were used to service.
 

 651 So.2d at 1307-08 (ellipsis in original);
 
 see also Wilson v. Wilson,
 
 992 So.2d 395, 399 (Fla. 1st DCA 2008) (quoting extensively from
 
 Stevens
 
 to provide guidance to the trial court on a remand for further proceedings).
 

 The Wife argues that the treatment of the passive appreciation of the Riverview property under
 
 Mitchell
 
 — particularly on the facts shown here — is manifestly unfair to her. She points out that the Husband’s contribution of nonmarital funds to the Riverview property was limited to his relatively small down payment and the minimal reduction in the principal balance of the mortgage during the six-month period between his acquisition of the property and the parties’ marriage. Indeed, marital funds were the source of virtually all of the monies used to service the mortgages on the property and the various expenses associated with it.
 

 Under the First District’s approach in
 
 Stevens,
 
 the Wife would be entitled to equitable distribution of a share of substantially all of the passive appreciation in the Riverview property during the course of the parties’ twenty-seven-year marriage. However, under
 
 Mitchell,
 
 the Wife is not entitled to any portion of the considerable passive appreciation in the value of the property. The Wife submits that this result “is neither equitable nor in compliance with the statute.” She asks us to either recede from
 
 Mitchell
 
 or to certify conflict with
 
 Stevens.
 

 This panel is bound by
 
 Mitchell.
 
 Accordingly, we affirm the final judgment of dissolution of marriage in all respects. However, we do certify that our decision in this case is in direct conflict with
 
 Stevens
 
 on the issue of the treatment of the passive appreciation of nonmarital real property
 
 *760
 
 that is encumbered by an indebtedness serviced by marital funds.
 
 See generally
 
 Dawn D. Nichols & Sean K. Ahmed,
 
 Non-marital Real Estate: Is the Appreciation Marital, Nonmarital, or a Combination of Both?,
 
 81 Fla. B.J. 75 (Oct. 2007) (describing a conflict between
 
 Mitchell
 
 and the analyses employed by the four other district courts of appeal to the treatment of the appreciation in the value of nonmarital real estate).
 

 Affirmed; conflict certified.
 

 SILBERMAN and LaROSE, JJ., Concur.
 

 [1]
 

 . At the final hearing, the Husband testified that he had paid the $2000 down payment. The Wife’s testimony was in conflict with the Husband’s testimony on this point. She testified that she had contributed $500 from her separate funds toward the down payment. The trial court did not make a finding of fact resolving this conflict in the evidence.