POLEN, J.
 

 Appellant, Concetta Rafanello (wife), appeals the trial court’s final judgment of dissolution of marriage and order declining to hear her objection to the clerk’s determination of Appellee, Mark Bode’s (husband), indigency for purposes of appeal. We reverse in part and remand for further proceedings.
 

 The parties’ marriage was dissolved by final judgment of dissolution of marriage on May 5, 2008. Appellees, Craig Bode (Mark Bode’s son from a previous marriage), M.C.C. Stocks, Inc., a Florida corporation, B.W.M., Inc., a Florida corporation, and CRB Stocks, Inc., a Florida corporation were also named respondents in wife’s petition for dissolution of marriage.
 
 [1]
 
 Judge Charles E. Burton entered a default judgment against the corporate defendants on August 21, 2007 for their failure to retain counsel and defend the action. On March 6, 2008, Judge Elizabeth T. Maass vacated the default judgment noting that the corporate respondents had filed answers to the petition through counsel. The court also noted that the corporate respondents may continue to defend the action through counsel. The corporate respondents neglected to defend against the action any further, and the trial court never reentered a default judgment against them after the final hearing.
 

 Because of the great complexity of husband and wife’s financial affairs during their two-year marriage, we limit our opinion to the trial court’s equitable distribution of the value of the marital home which is the only erroneous portion of the distribution.
 

 Husband and wife married on December 30, 2004, approximately three months after they first met. The couple resided in a home which, in November 1997, husband’s son, Craig, and husband’s former wife purchased for $425,000 as tenants in common. Husband arranged the financing of the home, and
 
 Craig used
 
 $50,000 he had inherited from his grandparents as a deposit. In February 1998, the former wife conveyed her share of the house to Craig by executing a Quit Claim deed.
 

 The trial court found that most of the home’s expenses were paid from a bank account in Craig’s name but largely funded by husband’s earnings. Husband made all of the mortgage payments on the home, and took out several loans secured by the home. In June 2003, prior to the marriage of husband and wife, appraiser John Cáta-lo valued the property at $1,725,000. In November 2006, one month prior to the parties’ separation, Catalo appraised the home at $2,530,000.
 

 In November 2007, after petitioning for divorce, wife hired appraiser Michael Slade to appraise the home, and he determined that as of the date of the couple’s marriage on December 30, 2004, the home was worth $1,800,000. Slade reached this determination by researching the sales of comparable homes during 2004. Slade admitted on cross-examination that it would not be uncommon for the land to constitute two-thirds of the value of the home. Slade also stated that since 2000, given market conditions, hurricane damage, and rapid appreciation, it was the value of the land and not the value of the home that was appreciating. At the conclusion of his testimony, the trial court asked Slade whether, when he appraised the home in 2007 to
 
 *869
 
 determine its value in 2004, he knew what work had been completed since 2004. Slade responded that he did not specifically know what work had been completed, but that he assumed the home was in slightly worse condition in 2004 than it appeared in 2007.
 

 Wife testified that, during the course of the marriage, she invested her labor and approximately $50,000 in marital funds in the improvement of the home. Wife explained that she and her father installed tiles around the pool, painted almost the entire house, applied a faux finish to several rooms, redesigned and painted the entertainment room, replaced portions of the landscaping which were damaged during a hurricane, and stained and refinished the kitchen cabinets. Kent Martindale, the Bodes’ neighbor, testified that most of the significant work done on the home was completed prior to husband and wife’s marriage. Martindale also stated that the entire family worked on the faux painting and that Craig did most of the landscaping repairs himself.
 

 Wife argues the trial court erred in finding that the value of the marital home was not increased by the expenditure of marital labor and funds because competent, substantial evidence showed that the home’s equity increased from $1,800,000 to $2,530,000 during the course of the marriage. Further, wife argues, she is entitled to a share of the home’s equity because $12,000 in marital funds was used to pay the mortgage on the home during the marriage.
 

 A trial court’s equitable distribution of marital assets is reviewed for an abuse of discretion.
 
 Hollister v. Hollister,
 
 965 So.2d 341, 343-44 (Fla. 2d DCA 2007). “The trial court’s findings are entitled to the presumption of correctness accorded to trial court judgments where the credibility of witnesses is a factor.”
 
 Seijas v. Seijas,
 
 557 So.2d 102, 103 (Fla. 3d DCA 1990).
 

 As to wife’s contention that her expenditure of marital funds and labor resulted in the increase in value of the marital home, we have reviewed the record and hold that the trial court did not abuse its discretion in finding otherwise. Wife did not present substantial, competent evidence that her expenditure resulted in the appreciation.
 
 Earner v. Earner,
 
 716 So.2d 795, 797-98 (Fla. 4th DCA 1998).
 

 Wife asserts that the trial court erred in neglecting to award her half of the equity in the home because marital funds were used to pay the mortgage. In
 
 Oldham v. Oldham,
 
 683 So.2d 579 (Fla. 4th DCA 1996), this court held:
 

 Absent a showing that either marital funds, assets, or the work efforts of one or both spouses contributed to the enhanced value of the asset, the appreciated value of one spouse’s nonmarital asset occurring during the marriage is not subject to equitable distribution.
 
 If the nonmarital property is encumbered by a mortgage, however, and marital funds are expended to service the mortgage or to pay taxes, the ‘property then becomes marital even if the enhanced value is due solely to market forces.
 

 Id.
 
 at 580 (citations omitted) (emphasis added).
 

 Wife points to the emphasized portion of
 
 Oldham
 
 to support her conclusion that, because $12,000 of marital funds paid down the mortgage during the marriage, she is entitled to half of the home’s equity. The broad proposition announced in
 
 Oldham
 
 was drawn from
 
 Stevens v. Stevens,
 
 651 So.2d 1306 (Fla. 1st DCA 1995), which held:
 

 An asset brought by one party to a marriage, which appreciates during the course of the marriage, solely on account
 
 *870
 
 of inflation or market conditions, becomes in part a marital asset, if it is encumbered by indebtedness which marital funds service.
 

 Id.
 
 at 1307.
 

 Most recently, however, the Second District addressed this specific issue in
 
 Kaaa v. Kaaa,
 
 9 So.3d 756 (Fla. 2d DCA 2009), and certified its decision as in direct conflict with
 
 Stevens.
 
 In
 
 Kaaa,
 
 prior to marrying wife husband owned a home which he purchased for $36,000. During the couple’s twenty-seven year marriage, $22,279 of marital funds were used to reduce the mortgage on the home.
 
 Id.
 
 Also during the marriage, the couple built a 360-square-foot addition on the home which wife’s expert testified increased the value of the home by $40 per square foot, or $14,400.
 
 Id.
 
 At the time of separation, the home was worth $225,000. The trial court found that the value of the home had been enhanced by a total of $36,679 during the course of the marriage and that each party was entitled to half of that amount.
 
 Id.
 

 Wife appealed arguing that under
 
 Stevens,
 
 she was entitled to half of the equity in the home, even that which was due to passive appreciation of the property.
 
 Id.
 
 The court relied on its previous holding in
 
 Mitchell v. Mitchell,
 
 841 So.2d 564 (Fla. 2d DCA 2003), and upheld the trial court’s distribution: “[T]he increase in the value of the Riverview property resulting from passive appreciation is the Husband’s non-marital asset.”
 
 Id.
 
 The Third District has held similarly in
 
 Adkins v. Adkins,
 
 650 So.2d 61 (Fla. 3d DCA 1994).
 

 The broad holding in
 
 Stevens
 
 and
 
 Old-ham
 
 can be problematic in a case like the present one because it supports the contention that, regardless how brief the marriage or how insubstantial the investment of marital funds, the mere fact that marital funds were used to pay the mortgage entitles a party to half of the equity in the home. Thus, although we have relied on
 
 Stevens
 
 in some of our other cases, the holding in
 
 Stevens
 
 is limited to the facts of that case.
 

 Equity will not allow a hard and fast rule that the non-deed spouse is entitled to one-half of the difference between the value of the property at the beginning of the marriage and the value at dissolution where some marital funds were used to reduce the principal of the mortgage. A trial court may also consider the following when supported by competent, substantial evidence in keeping with section 61.075 and applicable case law: the length of the marriage; whether marital labor, money, or both were used to enhance the value of the marital property; and other equitable factors.
 

 In the present case, the trial court erred in failing to consider the $12,000 of marital funds used to pay the mortgage on the property in reaching an equitable distribution. On remand, the trial court must factor the use of marital funds used to pay the mortgage into its equitable distribution but must also consider the factors listed above.
 

 The trial court also erred in refusing to enter a default judgment against the corporate defendants as they were not represented by counsel at trial.
 
 Richter v. Higdon Homes, Inc.,
 
 544 So.2d 300, 300 (Fla. 1st DCA 1989) (“[a] corporation may not represent itself through non-lawyer employees, officers, or shareholders”). Therefore, we reverse and remand for further proceedings consistent with this opinion.
 

 Reversed and remanded.
 

 WARNER, J., and KAPLAN, MICHAEL G., Associate Judge, concur.
 

 [1]
 

 . We note that not a single Appellee, including husband, filed an answer brief in the instant appeal.